**ATLANTIC & GULF STEVEDORES, INC., Plaintiff-Appellee Cross-Appellant,**

v.

**REVELLE SHIPPING AGENCY, INC., Defendant-Appellant Cross-Appellee.**

No. 83–3666.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1985.

---

Kenneth B. Krobert, Chalmette, La., for defendant-appellant cross-appellee.

R.A. Osborn, Jr., Gretna, La., for plaintiff-appellee cross-appellant.

Before GEE, REAVLEY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The district court rendered judgment against defendant, Revelle Shipping Agency, Inc. (Revelle), on grounds that defendant, as agent, was responsible for its principal's obligation. We disagree and reverse.

I.

Revelle acts as a maritime general agent for vessel owners and operators at the Port of New Orleans. In 1980, Revelle began acting as local agent for Clover Trading Company (Clover), a Danish vessel owner and operator. Revelle's agency agreement provided that it would receive its instructions from Nassau Navigation, Inc. (Nassau), Clover's general United States agent.

Revelle was informed by Nassau that Clover's vessel, the M/V A.P.J. PRITI would call at New Orleans around September 30, 1981. After disclosing that it was acting as agent for Clover, Revelle contracted with plaintiff, Atlantic & Gulf Stevedores, Inc. (Atlantic), to discharge the PRITI's cargo. The PRITI arrived as scheduled and Atlantic discharged her cargo. On November 4, 1981, Atlantic submitted invoices in the amount of $33,097.14 for its stevedoring services.

On September 28, 1981, before the PRITI's arrival in New Orleans, Revelle telexed Nassau and requested advance funds of $29,650 for the call of the PRITI, including $18,500 for Atlantic's estimated charges. On October 9, 1981, Nassau transmitted the requested $29,650 to Revelle.

Clover had failed to provide Revelle with adequate funds to pay port charges on other Clover vessels that called in New Orleans. Instead of applying the $29,650 exclusively to expenses of the PRITI, Revelle used these funds to pay Clover's most pressing debts. On December 28, 1981, Revelle submitted a final accounting to Clover for the call of the PRITI and requested additional funds to meet unexpected expenses. Unfortunately, Clover filed a bankruptcy proceeding in Denmark and no additional funds were provided.

In response to Atlantic's demands for payment, Revelle denied that it had received funds from Clover. Atlantic eventually learned of the advance made to Revelle for the PRITI and demanded payment from Revelle. Revelle refused and this suit followed.

The district court found that Revelle violated its agency agreement with Clover by

disbursing funds advanced specifically for the port call of the PRITI to pay charges incurred by other Clover vessels. The court held that as a consequence of this breach, Atlantic should recover from Revelle the $18,500 advanced by Clover for payment to Atlantic.

## II.

■ The question of agency law presented in this case for resolution under the general maritime law[1] can be stated as follows: Can a creditor of a principal recover its charges from an agent if the agent fails to follow the principal's instructions to pay the creditor's charges? In answering this question, we acknowledge that the record fully supports the trial court's factual finding that the agent, Revelle, did not profit from its failure to pay the creditor, Atlantic, nor was Atlantic's claim against the principal, Clover, prejudiced by Revelle's misrepresentation that it had not received funds from Clover.

■ In general, a maritime agent acting for a disclosed principal is not liable for claims arising out of contracts executed by the agent on behalf of his principal. *Lake City Stevedores, Inc. v. East West Shipping Agencies, Inc.*, 474 F.2d 1060, 1063 (5th Cir.1973). An agent's failure to follow his principal's instructions to disburse funds to a particular creditor does not ordinarily change the application of this rule. The Restatement of Agency 2d § 342(1) (1958) provides: "An agent who receives money or other thing from his principal to pay or transfer to another person is not thereby liable to the other."[2]

■ We perceive no reason to depart from the general rule stated above. Atlantic makes no serious argument that the implied promise of Revelle—to disburse the funds as requested by Clover—was for the primary benefit of Atlantic so as to support a third party beneficiary claim by Atlantic against Revelle.[3] Such an argument would fail in any event in these circumstances where Atlantic did not extract such a promise from Clover and had no knowledge of Clover's instructions. The record reflects that Clover merely followed a standard business practice of requiring a written estimate of creditors' charges before disbursing funds to its agent, Revelle. Clover's disbursal of funds to Revelle predicated on such an estimate does not warrant an inference that the transaction was intended primarily for the creditors' benefit. Revelle violated no duty, either contractual or otherwise, to Atlantic when Revelle deposited the $29,650 draft in question with other Clover funds and applied that common fund to pay Clover's most pressing debts. Revelle's violation of its principal's instructions gives no right of recovery to Atlantic, a stranger to that relationship. The district court's contrary conclusion is erroneous; its judgment is therefore REVERSED.

1. It is firmly settled that actions on stevedoring contracts are governed by general maritime law. *American Stevedores, Inc. v. Porello,* 330 U.S. 446, 456, 67 S.Ct. 847, 852, 91 L.Ed. 1011 (1947).

2. See also H. Reuschlein & W. Gregory, Handbook on the Law of Agency and Partnership § 123, at 192 (1979).

3. The Restatement of the Law of Agency 2d § 342(2) (1958) provides: "An agent whose promise to pay is primarily for the benefit of a third person may be liable in an action of contract to the third person for his failure to perform his promise." See also Reuschlein, supra, § 123, at 193. Under well settled contract principles, a promise must be made directly for the benefit of a third party to support a claim by that third party under the contract. See, e.g., Restatement of the Law of Contracts 2d §§ 302, 304, 315 (1981) ("intended" third party beneficiaries of contracts may seek enforcement of the contract; "incidental" beneficiaries may not); *Waterman Steamship Corp. v. Dugan & McNamara, Inc.,* 364 U.S. 421, 424–25, 81 S.Ct. 200, 202, 5 L.Ed.2d 169 (1960) (under general maritime law, third party vessel owner may recover as beneficiary of stevedoring contract which is "plainly for the benefit of the vessel") (quoting *Crumady v. Joachim Hendrik Fisser,* 358 U.S. 423, 428, 79 S.Ct. 445, 448, 3 L.Ed.2d 413 (1959)).