**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-31259

In Re: In the Matter of the complaint: T.L. JAMES & COMPANY INC., as owner of the Crane Barge ALROAR, praying for Exoneration from or Limitation of Liability; T.L. JAMES & COMPANY INC., as owner of the Crane Barge BILL JOHNSON, praying for Exoneration from or Limitation of Liability

Petitioners

TEXACO TRADING AND TRANSPORTATION, INC.; TEXACO PIPELINE INCORPORATED; TEXACO INC.; EQUILON PIPELINE CO., LLC; EQUILON ENTERPRISES, LLC

Plaintiffs - Appellants

VERSUS

LAINE CONSTRUCTION COMPANY INC.; ET AL

Defendants

T.L. JAMES & COMPANY INC.

Defendant - Appellee

T.L. JAMES & COMPANY INC., as owner of the Crane Barge ALROAR

Petitioner - Appellee

VERSUS

LAINE CONSTRUCTION COMPANY INC.; ET AL

Claimants

TEXACO PIPELINE INC.; TEXACO INC.

-1-

EQUILON PIPELINE COMPANY, LLC, successor-in-interest to Texaco Pipeline, Inc.; EQUILON ENTERPRISES, LLC, successor-in-interest to Texaco Trading and Transportation Inc. and Texaco Inc.

Movants - Appellants

_____

T.L. JAMES & COMPANY INC., as owner of the Crane Barge BILL JOHNSON

Petitioner - Appellee

VERSUS

LAINE CONSTRUCTION COMPANY INC.; ET AL

Claimants

TEXACO PIPELINE INC; TEXACO INC.; EQUILON PIPELINE COMPANY, LLC, as successor-in-interest to Texaco Pipeline Inc. and Texaco Inc.

Claimants-Appellants

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
(98-CV-2683-D)
_____

February 25, 2002

Before EMILIO M. GARZA, PARKER and DENNIS, Circuit Judges.

PER CURIAM:[*]

Texaco Pipeline Incorporated[1] (hereinafter "Texaco Pipeline") and Texaco Inc. (collectively hereinafter "Texaco Plaintiffs") appeal the district court's: (1) dismissal of their motion for

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]Equilon Pipeline Company LLC is the successor-in-interest to Texaco Pipeline Incorporated.

partial summary judgment; (2) dismissal of their declaratory judgment action; and (3) grant of summary judgment dismissing their contract claims. For the reasons that follow, we reverse the district court's ruling: (1) dismissing the Texaco Plaintiffs' motion for partial summary judgment; (2) dismissing the Texaco Plaintiffs' declaratory judgment action; and (3) granting summary judgment dismissing the Texaco Plaintiffs' contract claims. We remand this case to the district court for further proceedings consistent with this opinion.

### BACKGROUND

In February of 1997, Laine Construction Company, Inc. (hereinafter "Laine") and Texaco Trading and Transportation, Inc.[2] (hereinafter "Texaco Trading") entered into a written agreement (hereinafter "Master Contract") whereby Laine would perform certain services in connection with Texaco Trading's construction of a 24-inch crude oil pipeline (hereinafter "Poseidon Pipeline") running through Lake Barre, Louisiana. Laine and Texaco Trading were the only signatories to the Master Contract. In March of 1997, T.L. James and Company, Inc. (hereinafter "T.L. James") entered into a written agreement (hereinafter "Subcontract") with Laine to perform a portion of Laine's obligations under the Master Contract. Specifically, T.L. James agreed to install navigation marker signs and perform pipe ditch excavation and backfill. T.L. James and Laine were the only signatories to the Subcontract. In addition to the terms of the Subcontract, T.L. James also accepted all of the terms of the Master Contract between Laine and Texaco Trading with respect to the work to be performed under the Subcontract. On or

---

[2]Equilon Enterprises LLC is the successor-in-interest to Texaco Trading and Transportation Inc. Texaco Inc. is a part-owner of Equilon Enterprises LLC.

about May 16, 1997, a few weeks after the T.L. James Crane Barge ALROAR completed a trench for the Poseidon Pipeline, Texaco Pipeline's 16-inch crude oil pipeline (hereinafter "Existing Pipeline"), in the immediate vicinity of the trenching work performed by the ALROAR, ruptured causing approximately 6,500 barrels of oil to spill into Lake Barre.

The Texaco Plaintiffs and Texaco Trading filed suit in district court against Laine and T.L. James asserting a total of seven causes of action for: (1) contractual indemnity; (2) statutory remedies under the Oil Pollution Act of 1990[3] (hereinafter "OPA"); (3) indemnity-contribution-subrogation; (4) negligence; (5) quasi-contract; (6) unseaworthiness; and (7) declaratory judgment. T.L. James filed two separate limitation of liability actions, one each, in its capacity as owner of the Crane Barges ALROAR and BILL JOHNSON. The district court consolidated these actions with the plaintiffs' suit. Laine was dismissed from the suit and the district court then: (1) granted T.L. James's motion for summary judgment dismissing all claims by Texaco Trading; (2) granted T.L. James's motion for partial summary judgment dismissing all contract related claims; (3) granted in part T.L. James's motion for summary judgment dismissing Texaco Inc.'s claims for contractual indemnity, unseaworthiness, negligence, relief under the OPA, and declaratory judgment but deferred ruling on the indemnity-contribution-subrogation claim and quasi-contract claim; and (4) denied as moot, Texaco Trading and the Texaco Plaintiffs' motion for partial summary judgment seeking a ruling that the Limitation of Liability Act[4] does not apply to

---

[3] 33 U.S.C.A. §§ 2701-2761 (West 2001).

[4] 46 U.S.C.A. app. §§ 181-196 (West Supp. 2001).

their indemnity and breach of contract claims.

The district court's rulings dismissing the Texaco Plaintiffs' contract claims were limited to questions of contract interpretation based on the contract documents themselves and no factual determinations on the merits of the claims were made. Although all of the plaintiffs asserted claims for relief under the OPA and for negligence, the district court found that only Texaco Pipeline, as owner of the Existing Pipeline, has viable causes of action against T.L. James under the OPA and for negligence. On appeal, the Texaco Plaintiffs[5] assert that the district court erred in: (1) finding their motion for summary judgment moot; (2) granting summary judgment against them on their contract claims; and (3) holding that they were not entitled to maintain a declaratory judgment action.

**STANDARDS OF REVIEW**

We review a district court's grant of summary judgment *de novo*. *See Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-26, 106 S. Ct. 2548, 2552-55, 91 L. Ed. 2d 265 (1986). The interpretation of contract terms is a question of law and is also reviewed *de novo. See Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co., Inc.,* 89 F.3d 243, 246 (5th Cir. 1996). We review a

---

[5]Texaco Trading is not a party in this appeal and the district court's deferred rulings are not before this court on appeal.

-5-

district court's declaratory judgment decision for abuse of discretion. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991) (citation omitted).

**ANALYSIS**

The Texaco Plaintiffs assert that the district court erred in: (1) granting summary judgment on their contract claims in favor of T.L. James; (2) holding that they were not entitled to maintain a declaratory judgment action; and (3) holding that their motion for summary judgment was moot because they had no enforceable contract rights. We review each of these arguments separately.

A. Contractual Indemnity Claims

The district court held that the beneficiaries clause in the Subcontract between Laine and T.L. James did not create a right of contractual indemnity for the Texaco Plaintiffs. The district court reasoned that the beneficiaries clause in the Subcontract was a restrictive clause that limited any parent companies, affiliates and subsidiaries of Texaco Trading to asserting only those rights determined to be owed to Texaco Trading under the Subcontract. The district court further reasoned that because Texaco Trading suffered no damages as a result of the oil spill and did not have a right of contractual indemnity, neither Texaco Inc. or Texaco Pipeline had the right to assert independent claims for direct damages.

The Texaco Plaintiffs maintain that the district court's holding is in error because they are third-party beneficiaries of the Subcontract and T.L. James agreed to be bound by the terms of the Subcontract which were designed to protect them from the type of damage that resulted from the rupture of the Existing Pipeline. The Texaco Plaintiffs argue that notwithstanding an absence of damages on the part of Texaco Trading, under both maritime law and

-6-

Louisiana law, they are entitled, as expressly named and intended third-party beneficiaries under the terms of the Subcontract, to independently assert indemnity claims for damages resulting from T.L. James's breach of its contractual commitments and demand performance from T.L. James.

T.L. James contends that the Master Contract and Subcontract are governed by maritime law and that the objectively determined intent of the parties is the relevant guide to determining whether the Texaco Plaintiffs are third-party beneficiaries who can assert independent claims for damages. Specifically, T.L. James argues that the parties intended to restrict any parent or subsidiary companies from asserting independent claims when Texaco Trading had no right to assert a claim. Furthermore, T.L. James contends that maritime law requires strict construction of the indemnity provisions of Exhibit 3 to the Subcontract which clearly express that T.L. James is not obligated to indemnify anyone because Texaco Trading, Texaco Inc. and Texaco Pipeline's negligence was alleged to be responsible for the oil spill in its Answer to their Second Amended Complaint.

The Master Contract provides that the agreement is to be "governed by and interpreted in accordance with the General Maritime Laws of the United States, and where not applicable, the laws of the State of Louisiana shall apply." In the instant case, the Master Contract and Subcontract are maritime contracts because they "did not merely touch incidentally on a vessel," but specifically required the use of a vessel in a navigable waterway to install navigation marker signs and perform pipe ditch excavation and backfill. *See Dupre v. Penrod Drilling Corp.*, 993 F.2d 474, 477 (5th Cir. 1993).

Section 1 of the Subcontract contains T.L. James's agreement

to the terms of the Subcontract and the Master Contract with respect to the work to be performed thereunder.  Section 1 also states that except as otherwise provided in the Subcontract, it is the intent and purpose of the parties to have T.L. James assume the "obligations, indemnities and liabilities of CONTRACTOR [Laine] with regard to the work to be done . . . [t]hereunder, that CONTRACTOR [Laine] has with respect to COMPANY [Texaco Trading]." Section 9(a) of the Subcontract, reads in relevant part as follows: "Subject to the other provisions of this section, and to the maximum extent permitted by applicable law SUBCONTRACTOR [T.L. James] shall abide by the terms of the Liability-Indemnity provisions as set forth in Exhibit 3."[6]  The only reasonable interpretation is that the parties intended to have T.L. James assume only the obligations, indemnities and liabilities that Laine had with Texaco Trading except as otherwise provided in the Subcontract.

Under maritime law, third-party beneficiary status is determined by looking to the intent of the parties.  "A promise must be made directly for the benefit of a third party to support a claim by that third party under the contract."  *Atl. & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc.,* 750 F.2d 457,

---

[6]Pursuant to Section 9(a), the indemnity provisions of Exhibit 3 apply subject to the provisions of Section 9.  Section 9(g) provides for indemnity in the event of environmental pollution and Section 9(k) extends T.L. James's indemnity obligations to apply in the event of a breach of any provision of the Subcontract.  Because the provisions of Exhibit 3 apply *subject to* the provisions of Section 9 and we find that the provisions in Section 9 and elsewhere throughout the Subcontract, exclusive of Exhibit 3, indicate that the Texaco Plaintiffs are intended beneficiaries entitled to assert a claim for indemnity, T.L. James's argument that the Texaco Plaintiffs' claims are barred by an allegation of negligence fails.

459 n.3 (5th Cir. 1985).  *See also* R<small>ESTATEMENT</small> (S<small>ECOND</small>) <small>OF</small> C<small>ONTRACTS</small> § 302(1)(b) (1981)("Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.").

The Texaco Plaintiffs contend that the beneficiaries clause in Section 19 of the Subcontract gives them, as the parent and subsidiary companies of Texaco Trading, the right to independently assert an indemnity claim for damages under the Subcontract.[7] Although reliance on boilerplate beneficiary provisions, in and of themselves, is often misplaced when attempting to demonstrate that the parties contemplated and intended to confer the right sought to be exercised by the third party, examination of the entire Subcontract reveals that Texaco Inc. and Texaco Pipeline are intended beneficiaries.

In Section 9(g) of the Subcontract, T.L. James agreed to "exercise due diligence at all times and to conduct its operations in a manner that will prevent environmental pollution . . . and shall, at its own expense, clean up any pollution caused by it in the performance of the work."  This language does not restrict T.L. James's obligations to those that Laine had with respect to Texaco Trading.  Rather, the language in Section 9(g) serves to broaden T.L. James's obligations to include "any pollution caused by it in

---

[7] The beneficiaries clause, Section 19 of the Subcontract, reads as follows: "Beneficiaries of the rights granted to COMPANY [Texaco Trading] and CONTRACTOR [Laine] hereunder, include their parent companies, affiliates, subsidiaries and coventurers, if any, and all of their directors, officers, employees and agents."

the performance of the work."

In Section 9(k) of the Subcontract, T.L. James agreed to indemnify Laine and Texaco Trading and "hold them harmless from any and all loss, damage, penalties, costs, expenses and attorney's fees suffered or incurred on account of any breach of the aforesaid obligations and covenants, and any other provisions or covenants of this subcontract." The second paragraph of Section 15 of the Subcontract reads as follows: "Subcontractor [T.L. James] shall exercise extreme care at all time to avoid damage or injury to existing facilities of Company [Texaco Trading], or others, including, but not limited to, pipelines, sewers, water or gas mains, electric or telephone installations and fiber optics cables."  Pursuant to Section 15, T.L. James was obligated to exercise extreme care to avoid damage or injury to existing facilities owned not just by Texaco Trading, but also existing facilities owned by others.  The Existing Pipeline owned by Texaco Pipeline is precisely the type of existing facility contemplated by the parties and provided for in Section 15.

"A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty."  RESTATEMENT (SECOND) OF CONTRACTS § 304 (1981).

> [R]ecognition of a duty to the beneficiary means that the beneficiary has available for his own benefit the usual remedies for breach of contract. An action by the beneficiary is commonly a convenient way to enforce the right of the promisee as well as to redress any injury to the beneficiary.

*Id.* cmt. d.

Although the Existing Pipeline which ruptured was not the subject of the work contracted for in the Subcontract and the

Texaco Plaintiffs were not signatories to either the Master Contract or Subcontract, Section 15 created a duty for T.L. James to exercise extreme care to avoid damaging the Existing Pipeline. Section 9(g) of the Subcontract created a duty for T.L. James to clean up, at its own expense, any pollution caused by it in the performance of the trenching work. Section 9(k) of the Subcontract, unquestionably created a right of indemnity in Texaco Trading and Laine for breach of the provisions of the Subcontract by T.L. James and Section 19 extends to the Texaco Plaintiffs, the rights granted to Texaco Trading.

Inclusion in the Subcontract of the provisions in Sections 9(g), 9(k), 15 and 19 indicate that the parties were cognizant of the potential dangers to existing facilities in the area where the trenching work was to be performed and intended for T.L. James's obligations not to be limited only to those that Laine had with Texaco Trading but extend for the benefit of other parties as well. The Texaco Plaintiffs were not merely incidental beneficiaries of the Subcontract but intended beneficiaries and are therefore entitled to assert a claim for performance by T.L. James for breach of the provisions of the Subcontract. Upon a showing of proof of cause in fact and breach of T.L. James's duty to exercise extreme care, the Texaco Plaintiffs shall be entitled to indemnification, including clean up costs.

## B. Declaratory Judgment

The Texaco Plaintiffs sought a declaration: (1) of their contractual rights; (2) that T.L. James was responsible for the oil spill and the resulting damages; and (3) that Texaco Inc. and Texaco Pipeline are third-party beneficiaries under the Subcontract. After dismissing all of the Texaco Plaintiffs' contract claims, the district court dismissed their declaratory

-11-

judgment claim upon a finding that the Texaco Plaintiffs had no viable claims against T.L. James which could form the basis of a declaratory judgment. We have found that the Texaco Plaintiffs' are intended third-party beneficiaries and as such are entitled to assert independent contractual indemnity claims. Accordingly, we find that the district court abused its discretion in dismissing the Texaco Plaintiffs' declaratory judgment claim.

### C. Summary Judgment

The district court denied as moot, the Texaco Plaintiffs' motion for partial summary judgment after dismissing all of their contract claims. Because the Texaco Plaintiffs are entitled to assert independent contractual indemnity claims, we reverse the district court's denial of the Texaco Plaintiffs' motion for partial summary judgment and remand to the district court for further consideration but in doing so, we express no opinion of the merits of such claims.

### CONCLUSION

For the reasons discussed above, the district court's dismissal of the Texaco Plaintiffs' motion for partial summary judgment and declaratory judgment action and the grant of summary judgment dismissing the Texaco Plaintiffs' contract claims are reversed and remanded for further proceedings consistent herewith.

REVERSED AND REMANDED.

EMILIO M. GARZA, Circuit Judge, dissenting:

In this case, Texaco Pipeline and Texaco Inc. seek indemnification for damages suffered and attorneys' fees incurred on account of T.L. James's alleged breach of its subcontract with Laine Co. The majority seems to assume that simply because Texaco Pipeline and Texaco Inc. may enjoy third-party beneficiary status under the subcontract with respect to one or more of T.L. James's heightened duties of care, they are necessarily entitled to seek indemnification for breach of those duties. Because I believe Texaco Inc. and Texaco Pipeline are not intended third-party beneficiaries of indemnification rights under the subcontract, I respectfully dissent.

Simply stated, the background facts of this case are as follows: Texaco Trading, as a member of the Poseidon Oil Pipeline Co. LLC, was charged with managing the construction of a new oil pipeline ("the Poseidon Pipeline"). Texaco Trading entered into a contract with Laine Co. ("the Master Contract") to perform most of the work involved in constructing the new pipeline. Texaco Trading and Laine Co. were the only signatories to the Master Contract. Laine Co. then subcontracted a portion of its work obligations to T.L. James.[8] Under the terms of the subcontract, T.L. James assumed the "obligations, indemnities and liabilities" that Laine Co. owed to Texaco Trading under the Master Contract with regard to

---

[8]T.L. James assumed the tasks of installing navigation marker signs and performing pipe ditch excavation and backfill.

-13-

the work to be done. T.L. James also assumed additional obligations to Laine Co., Texaco Trading, and other parties under the subcontract. Laine Co. and T.L. James were the only signatories to the subcontract.

Shortly after T.L. James completed a trench for the Poseidon Pipeline, a nearby crude oil pipeline owned by Texaco Pipeline, a subsidiary of Texaco Trading, ruptured, causing a substantial oil spill. As a result, Texaco Pipeline and Texaco Inc., the parent company of Texaco Trading, incurred significant clean-up costs and were named in several lawsuits asserting damages as a result of the spill. Texaco Pipeline and Texaco Inc. now seek indemnification from T.L. James on account of T.L. James's alleged breach of its duties under the subcontract with Laine Co.

The only way that Texaco Pipeline and Texaco Inc. can succeed on an indemnification claim vis-a-vis the subcontract is if they are both intended third-party beneficiaries of the subcontract's indemnification provisions. Under maritime law, "third-party beneficiary status is determined by looking to the intent of the parties." Maj. Op. at 8. The mere fact that a particular contract right may benefit a third party is not sufficient to establish the intent necessary to confer beneficiary status. "A promise must be made directly for the benefit of a third party to support a claim by that third party under the contract." *Atl. & Gulf Stevedores, Inc. v. Revelle Shipping*

*Agency, Inc.*, 750 F.2d 457, 459 n.3 (5th Cir. 1985).

The majority implicitly concludes that Texaco Pipeline and Texaco Inc. are intended third-party beneficiaries of the subcontract's indemnification provisions based on a combination of three factors. First, the majority notes that Laine Co. and T.L. James, when drafting the subcontract, clearly contemplated the risks of environmental pollution and damage to existing facilities. Specifically, the majority focuses on two of the subcontract's provisions under which T.L. James is held to a heightened standard of care when performing the excavation and backfill work.[9] One of these two provisions expressly names Texaco Trading as a third party benefitted by the provision. Second, the majority notes that Section 19, the subcontract's beneficiaries clause, lists as beneficiaries of Texaco Trading's rights under the subcontract its

---

[9]The majority focuses on Sections 9(g) and 15 of the subcontract. Section 9(g) provides:

> SUBCONTRACTOR shall exercise due diligence at all times and to conduct its operations in a manner that will prevent environmental pollution. . . . SUBCONTRACTOR agrees to . . . take all reasonable measures to prevent pollution and shall, at its own expense, clean up any pollution caused by it in the performance of the work[.]

Section 15 reads:

> SUBCONTRACTOR shall exercise extreme care at all time [sic] to avoid damage or injury to existing facilities of COMPANY, or others, including, but not limited to, pipelines, sewers, water or gas mains, electric or telephone installations and fiber optics cables.

parent company and subsidiaries.[10]  Third, the majority notes that

Section 9(k) of the subcontract broadly states that T.L. James

shall indemnify Texaco Trading for "any and all loss, damage,

penalties, costs, expenses and attorneys' fees suffered or incurred

on account of any breach [of the subcontract's provisions]."  The

majority reads these provisions of the subcontract together to

conclude that Laine Co. and T.L. James intended to extend for the

benefit of Texaco Pipeline and Texaco Inc. not only T.L. James's

heightened duties of care, but also its obligation to indemnify

Texaco Trading.

As a threshold matter, I agree with the majority's

conclusion that Laine Co. and T.L. James intended Texaco Trading to

be a third-party beneficiary of T.L. James's heightened duties of

care and indemnification obligations under the subcontract.  Where

I part ways with the majority, however, is in determining the

significance Section 19 has for additional third-party

beneficiaries.  Specifically, I disagree with the majority's

apparent conclusion that Section 19 somehow creates third-party

beneficiary rights in Texaco Pipeline and Texaco Inc. in every

instance in which Texaco Trading has a third-party right.  On the

---

[10]Section 19 reads:

> Beneficiaries of the rights granted to COMPANY [Texaco
> Trading] and CONTRACTOR [Laine Co.] hereunder, include
> their parent companies, affiliates, subsidiaries and
> coventurers, if any, and all of their directors,
> officers, employees and agents.

contrary, Section 19 does not create new beneficiaries of the rights granted to Texaco Trading, but rather identifies more specifically those additional third parties already intended to be benefitted by the subcontract's individual provisions.

For example, on its face, Section 15's requirement that T.L. James exercise extreme care to avoid damage to existing facilities contemplates the protection of third parties in addition to Laine Co. and Texaco Trading. Section 15, however, does not specify those additional parties by name. Any doubt about the identity of those additional beneficiaries, however, is cleared up by Section 19. At the very least, the parent and subsidiary of Texaco Trading, to the extent they own existing facilities in the vicinity of the excavation site, have a right to enforce this provision.

In contrast to Section 15, the language of Section 9(k) makes no suggestion that the parties intended it to protect parties beyond Laine Co. and Texaco Trading. On the contrary, the provision states only that T.L. James shall indemnify Laine Co. and Texaco Trading. The fact that the parties did not extend indemnification rights to additional third parties makes sense considering the apparent purpose of the provision. When drafting the subcontract, Laine Co. logically would want to ensure that it, and in certain instances Texaco Trading, would be shielded from any possibility liability resulting from the improper actions of a subcontractor. Both Laine Co. and Texaco Trading had a stake in

-17-

the proper completion of the construction project. Neither T.L. James nor Laine Co. had any reason, however, to make T.L. James the all-risk insurer for others when neither Laine Co. nor Texaco Trading are exposed to liability themselves. It defies reason to assume that T.L. James, when subcontracting to perform a relatively small portion of the construction of the Poseidon Pipeline, would expose itself to such far-reaching liability.

Despite the clarity of the language set forth in Section 9(k), the majority concludes that Section 19 somehow broadens T.L. James's indemnification obligations by naming additional beneficiaries. Yet, the majority itself concedes that "reliance on boilerplate beneficiary provisions, in and of themselves, is often misplaced when attempting to demonstrate that the parties contemplated and intended to confer the right sought to be exercised by a third party." Maj. Op. at 9. Because the unambiguous language of Section 9(k) includes no suggestion that it extends Texaco Trading's indemnification rights for the benefit of Texaco Pipeline and Texaco Inc., Section 19, a laundry list of possible beneficiaries, has no bearing on its meaning.[11]

In sum, I believe Texaco Inc. and Texaco Pipeline are not intended third-party beneficiaries of indemnification rights under the subcontract. As a result, I would affirm the district court's

---

[11]Because Texaco Pipeline and Texaco Inc. are not intended third-party beneficiaries of Section 9(k)'s indemnification provision, we do not need to reach the issue of whether Exhibit 3's exception to indemnification applies in this case.

rulings dismissing Texaco Pipeline's and Texaco Inc.'s contract claims, denying as moot their motion for partial summary judgment, and dismissing their declaratory judgment action.[12]

---

[12]Texaco Pipeline and Texaco Inc. have only asked this court to determine whether they are entitled to indemnification under Section 9(k) of the subcontract. Thus, any arguments they could have raised for breach of Sections 15 and 9(g) of the subcontract are deemed waived. *See Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794 (5th Cir. 1994).