Steven H. MARKS and Joanmarie
S. Marks, Plaintiffs,

v.

SUDDATH RELOCATION SYSTEMS,
INC., Defendant.

No. CIV.A.H–04–0689.

United States District Court,
S.D. Texas,
Houston Division.

May 19, 2004.

Lynne Ellen Sassis, Sullin Johnston et al, Houston, TX, for Plaintiffs.

Vic Houston Henry, Henry Oddo et al, Dallas, TX, for Defendant.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Pending before the court are Steven and Joanmarie Marks' Motion for Remand (Docket Entry No. 3) and Defendant's Motion for Summary Judgment, or in the Alternative, Motion to Consolidate (Docket Entry No. 8). Having reviewed the motions, the parties' responses, and the governing law, the court concludes that the motion to remand should be denied and the motion for summary judgment should be granted.

### I. Factual and Procedural Background

In August of 2002 Import Export International/AAA Logistics ("AAA") inventoried and packed some of the Marks' household belongings in preparation for a move from Mexico to San Diego.[1] In April of 2003 Sullivan Moving & Storage Company ("Sullivan") took possession of one shipment and stored the goods in its warehouse in preparation for an ultimate shipment to Texas.[2] In May of 2003 Sullivan's agents traveled to Mexico and packed more of the Marks' belongings and made a second shipment of goods to San Diego, consolidating that shipment with the first.[3] The president of AAA claims that during the second shipment a chandelier, and nothing else, was damaged and that AAA promptly issued a check to pay the Marks to have it repaired.[4] AAA also attests that the only items missing from the original

---

1. Plaintiffs' Response to Defendant Suddath Relocation Systems, Inc.'s Motion for Summary Judgment, Docket Entry No. 11, Exh. A at ¶¶ 2–3.

2. *Id.* at ¶ 4.

3. *Id.* at ¶¶ 5–6.

4. *Id.* at ¶ 5.

inventory when the goods arrived in San Diego were 17 boxes containing food and liquor that could not be imported and were therefore returned as per the Marks' instructions.[5]

In May of 2003 the Marks contracted with United Van Lines, LLC ("United"), signing a bill of lading to ship their personal belongings from San Diego, California, to Spring, Texas.[6] Both "Sullivan Moving" and "Suddath Relocation" are disclosed as agents of United on the bill of lading.[7] The bill of lading also specifically provides that the interstate transportation of the Marks' belongings would be made pursuant to authority granted to United by the United States Department of Transportation and that United's published interstate tariffs would govern the shipment.[8]

Some time between May 19, 2003, and June 7, 2003, the Marks' belongings were moved from California to Texas. Then from June 7 to July 7, 2003, their belongings remained in a temporary storage-in-transit warehouse facility operated by either Suddath Relocation Systems, Inc. ("Suddath") or Suddath Relocation Systems of Houston, Inc.[9] According to Suddath, it did not take steps to convert the Marks' property from temporary interstate storage-in-transit to permanent storage as would be required by 49 C.F.R. §§ 375.12(c) and 609.[10] Therefore, its storage was continuously governed by United's bill of lading.[11]

On July 7, 2003, Suddath moved the Marks' belongings out of storage to the Marks' home.[12] When Suddath began unloading the truck, the Marks' observed that many boxes were smashed or contained water stains and that many others were missing.[13] Steven Marks noted these observations on the bill of lading when he signed for receipt of their belongings.[14]

On September 16, 2003, counsel for the Marks issued a demand letter to counsel for United, seeking $100,000 for belongings that were allegedly lost or damaged during the move.[15] In that letter, as well as in other correspondence between counsel for the Marks and for United, the Marks' attorney refers to Suddath as United's agent.[16]

In a letter dated December 4, 2003, United, through its attorney, informed the Marks that its investigation of the Marks' claims had led them to conclude that United had no liability for losses sustained during the interstate transportation of the Marks' belongings.[17] The letter explicitly

5. *Id.* at ¶ 7.

6. Defendant's Motion for Summary Judgment, or in the Alternative, Motion to Consolidate, Docket Entry No. 8, Exh. 2.

7. *Id.*

8. *Id.* at p. 2.

9. *Id.*, Exh. 4 at ¶ 2.

10. Response to Motion to Remand, Docket Entry No. 4 at ¶ 11.

11. *Id.* at ¶ 5.

12. Defendant's Motion for Summary Judgment, or in the Alternative, Motion to Consolidate, Docket Entry No. 8, Exh. 4 at ¶ 3.

13. Plaintiffs' Response to Defendant Suddath Relocation Systems, Inc.'s Motion for Summary Judgment, Docket Entry No. 11, Exh. B.

14. *Id.*, Exh. C and Defendant's Motion for Summary Judgment, or in the Alternative, Motion to Consolidate, Docket Entry No. 8, Exh. 2.

15. *Id.*, Exh. 5.

16. *Id.*, Exh. 7.

17. Plaintiffs' Response to Defendant Suddath Relocation Systems, Inc.'s Motion for Summary Judgment, Docket Entry No. 11, Exh. B–6.

states that the United bill of lading covered the movement of the Marks' property from warehouses in San Diego, while it was shipped to Texas, while it remained in storage-in-transit with Suddath, and then while it was moved from Suddath's warehouse to the Marks' home.[18] However, United's letter states that the bill of lading did not cover the movement of the property from Mexico or while it was stored in San Diego.[19]

On January 16, 2004, the Marks filed this action in the 281st District Court of Harris County, Texas, against Suddath.[20] All of the claims alleged in the plaintiffs' original petition—negligence, negligence *per se,* Texas Deceptive Trade Practices Act violation, and breach of contract—involve allegations that the Marks' household goods were damaged while in Suddath's possession pursuant to a storage contract made in June of 2003.[21] (The allegation that the Marks had a distinct "storage contract" with Suddath is plainly contradicted by uncontroverted summary judgment evidence.)

On January 20, 2004, United filed a declaratory judgment action against the Marks in the Southern District of Texas, Houston Division, seeking to determine the parties' respective rights and liabilities under an interstate bill of lading for the interstate shipment of the Marks' personal property.[22]

On February 24, 2004, Suddath filed a Notice of Removal, alleging that this court has original jurisdiction under 29 U.S.C. § 14706 (the Carmack Amendment) because the action involves alleged damage to goods shipped in interstate commerce from California to Texas.[23] On April 22, 2004, Suddath filed Defendant's Motion for Summary Judgment, or in the Alternative, Motion to Consolidate (Docket Entry No. 8). On May 11, 2004, the Marks filed a response (Docket Entry No. 11).

## II. *Remand*

### A. Standard of Review

■ Federal district courts are courts of limited jurisdiction. The courts' jurisdiction extends only as far as the Constitution and federal statutes allow. *See Weekly v. Morrow,* 204 F.3d 613, 615 (5th Cir. 2000) (*citing* U.S. CONST. art. III, § 2). When considering a motion to remand the removing party bears the "heavy" burden of showing that removal was proper. *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003).

■■ This action does not satisfy the requisites of diversity jurisdiction. If no other basis for subject matter jurisdiction exists, removal was improper and the action must be remanded. Removal on the basis of federal question jurisdiction is generally available to a defendant in a "civil action brought in a State court of which the district courts of the United States have original jurisdiction" founded on the existence of a claim or right "arising under" federal law. 28 U.S.C. § 1441(a)-(b); *McClelland v. Gronwaldt,* 155 F.3d 507, 511 (5th Cir.1998). Assessing the presence or absence of federal-question jurisdiction is generally governed by "the well-pleaded complaint rule,"

18. *Id.*

19. *Id.*

20. Notice of Removal, Docket Entry No. 1, Exh. 1 at p. 1.

21. See *id.,* Plaintiffs' Original Petition at ¶¶ 6–22.

22. Defendant's Motion for Summary Judgment, or in the Alternative, Motion to Consolidate, Docket Entry No. 8, Exh. 1.

23. Notice of Removal, Docket Entry No. 1 at pp. 2–3.

which finds federal jurisdiction only when a federal question appears on the face of a properly pleaded complaint. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). However, some actions may be removed even if the well-pleaded complaint rule has not been satisfied. *Id.* at 2430.

■ Under the doctrine of complete preemption the preemptive force of certain federal statutes is so great that they convert otherwise ordinary state law claims into federal claims despite the language of the complaint. *Flowerette v. Heartland Healthcare Center,* 903 F.Supp. 1042, 1044 (N.D.Tex.1995). *See also Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (*noting* complete or jurisdictional preemption arises when Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character"). The Fifth Circuit has characterized "[c]omplete preemption [a]s less a principle of substantive preemption than ... a rule of federal jurisdiction." *Roark v. Humana, Inc.,* 307 F.3d 298, 305 (5th Cir.2002).

### B. Analysis

■ The Marks argue that remand is proper because (1) no federal question exists and (2) Suddath's contention that this action arises under the Carmack Amendment is incorrect because their claims involve the storage, not the shipment, of goods. Suddath argues that this court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 because this action arises under the Carmack Amendment and the claims are completely preempted and removable. The court agrees.

■ All of the Marks' state law claims against Suddath are for lost or damaged household goods that moved in interstate commerce pursuant to a bill of lading with United. The bill of lading was issued pursuant to the dictates of the Carmack Amendment, 49 U.S.C. § 14706. The Carmack Amendment

> casts upon the initial carrier responsibility with respect to the entire transportation. The aim was to establish unity of responsibility and the words of the statute are comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation, which, as defined in the Federal act, includes delivery.

*Georgia, Florida & Alabama R.R. v. Blish Milling Co.,* 241 U.S. 190, 36 S.Ct. 541, 544, 60 L.Ed. 948 (1916) (internal citations omitted). The Carmack Amendment's definition of "transportation" is quite broad, encompassing "services related to the [goods'] movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(21)(B).

Precisely when the Marks' property was damaged is irrelevant to assessing the application of the complete preemption doctrine. The dispositive fact is that all of their claims are based on allegations that Suddath damaged and/or lost property whose transportation and storage was governed by an interstate bill of lading. Such claims are completely preempted and therefore involve a federal question. *Moffit v. Bekins Van Lines Co.,* 6 F.3d 305 (5th Cir.1993) (*holding* district court's ruling that federal law preempted all of the plaintiffs' state law claims for damage to their household goods was correct because their relationship was governed by the Carmack Amendment the purpose of which was to "substitute a paramount and national law as to the rights and liabilities of interstate carriers subject to the Amendment") (*quoting Air Products &*

*Chemicals v. Ill. Cent. Gulf R.R.*, 721 F.2d 483, 486 (5th Cir.1983), *cert. denied,* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984)).

The Fifth Circuit has explicitly recognized the application of the complete-preemption doctrine to claims arising under the Carmack Amendment. *Hoskins v. Bekins Van Lines,* 343 F.3d 769, 778 (5th Cir.2003). The court concludes that it has subject matter jurisdiction and that Suddath has carried its burden of showing that removal was proper.

### III. *Summary Judgment*

#### A. Standard of Review

■ Summary judgment is authorized when no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 1511. The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075

(5th Cir.1994) (*en banc* ), *quoting Celotex,* 106 S.Ct. at 2553–2554 (emphasis in original). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Id., citing Celotex,* 106 S.Ct. at 2553–2554. In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little,* 37 F.3d at 1075.

#### B. Analysis

■ Suddath argues that it was not the carrier or warehouseman responsible for the shipment of the Marks' belongings. Instead, a different entity, "Suddath Relocation Systems of Houston, Inc.," acted as United's disclosed agent in handling the Marks' shipment.[24] However, Suddath contends that even if the Marks' claims are construed as claims against Suddath Relocation Systems of Houston, Inc., neither Suddath entity could be held separately liable for any damages for which the Marks might prove they are entitled under the Carmack Amendment; United, as a

---

24. Defendant's Motion for Summary Judgment, or in the Alternative, Motion to Consoli-
date, Docket Entry No. 8 at pp. 2, 7.

disclosed principal, would be exclusively liable.

The Marks argue that summary judgment would be improper "because there are genuine issues of fact concerning which entity is liable for the damage to Plaintiffs' household goods, whether it is Suddath Relocation Systems, Inc., Suddath Relocation Systems of Houston, Inc. and/or United Van Lines." [25] The Marks, however, do not question the validity or applicability of United's bill of lading. Moreover, the Marks acknowledge that "Suddath Relocation" is named on the bill of lading as United's destination agent, although the Marks emphasize that the notation does not make it clear which Suddath entity United intended to designate.

Thus, the issue is whether a fact question exists as to Suddath's potential liability were the Marks to prove that they are entitled to recover for property damage allegedly sustained while their household goods were in Suddath's possession. The court concludes that no such question of fact exists.

A Suddath entity—either Suddath Relocation Systems, Inc. or Suddath Relocations Systems of Houston, Inc.—participated as United's disclosed agent in one phase of the interstate transportation of the Marks' property. That transportation was governed by a bill of lading, which in turn is governed by federal law. The federal statute that controls the bill of lading in question provides that

> Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within

the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

49 U.S.C. § 13907(a). *See, e.g., Werner v. Lawrence Transportation Systems, Inc.,* 52 F.Supp.2d 567, 568–69 (E.D.N.C.1998) (*explaining* "[n]ot only does the statutory language impose liability on a motor carrier for the acts and omissions of the carrier's agent, but case law holds that the agent of a disclosed principal cannot be held liable pursuant to a duly issued bill of lading contract" *and citing Atlantic & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc.,* 750 F.2d 457, 458 (5th Cir. 1985); *Lake City Stevedores, Inc. v. East–West Shipping Agencies, Inc.,* 474 F.2d 1060, 1063 (5th Cir.1973); *Fox v. Kachina Moving & Storage,* 1998 WL 760268 (N.D.Tex.1998); *Prince v. United Van Lines,* 1997 WL 53121 (N.D.Tex.1997)).

There is a genuine issue of material fact as to *when* the Marks' property was damaged or lost: United claims that it did not happen during the time when it was responsible for the Marks' property; the president of AAA claims that it did not happen during the move from Mexico to San Diego. Neither party has produced evidence as to whether the condition of the Marks' property changed while it was being stored in warehouses in San Diego prior to its shipment to Texas. But if the Marks are able to establish that some of their property was lost and damaged while in the possession of Suddath, as alleged in this action, United, as Suddath's disclosed principal, would be the entity liable as a matter of law under the relevant bill of lading. The Marks have produced no evidence that a fact issue exists as to whether Suddath would be liable independently of its role as an agent of United. According-

---

**25.** Plaintiffs' Response to Defendant Suddath Relocation Systems, Inc.'s Motion for Summary Judgment, Docket Entry No. 11 at ¶ 5.

ly, defendant's motion for summary judgment will be granted.

## IV. Conclusion and Order

Because the defendant's removal was proper, plaintiffs' Motion for Remand (Docket Entry No. 3) is **DENIED**. Defendant's Motion for Summary Judgment (Docket Entry No. 8) is **GRANTED**, and defendant's Alternative Motion to Consolidate (Docket Entry No. 8) is **MOOT**.

## FINAL JUDGMENT

In accordance with the court's Memorandum and Order granting the Defendant's Motion for Summary Judgment, this action is **DISMISSED with prejudice.**

Costs will be taxed against plaintiffs.

This is a **FINAL JUDGMENT**.