# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 16, 2008

Charles R. Fulbruge III
Clerk

No. 04-20911

BP OIL INTERNATIONAL, LTD.; BP EXPLORATION & OIL, INC.,

Plaintiffs–Appellees,

v.

EMPRESA ESTATAL PETROLEOS DE ECUADOR (Petroecuador), ET AL.,

Defendants–Appellant.

BP OIL INTERNATIONAL, LTD.; BP EXPLORATION & OIL, INC.,

Plaintiffs–Appellees Cross-Appellants,

v.

TIBER SHIPPING LLC; RIO GRANDE TRANSPORTS, in personam,

Defendants–Appellants Cross-Appellees

Appeals from the United States District Court
for the Southern District of Texas
No. 4:99-CV-3638
No. 4:99-CV-1475

Before BARKSDALE, BENAVIDES, and OWEN, Circuit Judges.

PER CURIAM:[*]

Following a bench trial in this shipping case, defendants Tiber Shipping, LLC and Rio Grande Transport, Inc. (collectively "the TIBER Interests") appeal the district court's judgment in favor of the plaintiffs, BP Oil International Ltd. and BP Exploration & Oil, Inc. (collectively "BP"), and defendant-cross-plaintiff Empresa Estatal Petroleos Del Ecuador (PetroEcuador) appeals the district court's judgment in favor of the TIBER Interests on PetroEcuador's cross-claim. We affirm.

I

PetroEcuador contracted with BP to purchase 140,000 barrels of unleaded gasoline. The contract specified that the gasoline have a gum content of less than three milligrams per one hundred milliliters and an oxidation stability of 240 to be determined at the point of departure. BP purchased the gasoline from Shell Oil Company. BP time-chartered the M/T TIBER from the TIBER Interests to transport the cargo from Texas to Ecuador. Following testing at the point of departure, the gasoline was loaded on board the M/T TIBER. When the cargo arrived in Ecuador, however, PetroEcuador rejected the gasoline because it did not meet the contractual specifications for gum content or oxidation stability. BP later sold the gasoline at a loss of almost two million dollars.

BP sued the TIBER Interests for breach of its duties and obligations under the charter party and bill of lading and for breach of bailment. BP also sued PetroEcuador for breach of contract and for wrongfully drawing on BP's letter of guarantee. PetroEcuador filed a cross-claim against the TIBER Interests "under the theory of bailment for PetroEcuador's benefit." After a bench trial,

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the district court rendered judgment in favor of BP on its claims against the TIBER Interests and PetroEcuador. The district court also rendered judgment against PetroEcoador on its cross-claim.

Both the TIBER Interests and PetroEcuador appealed the adverse judgment on BP's claims against them, and PetroEcuador appealed the adverse judgment on its cross-claim against the TIBER Interests. PetroEcuador and BP subsequently settled the claims between them and filed a joint motion for partial dismissal of the appeal on all of the issues between them. We GRANTED the joint motion of PetroEcuador and BP for partial dismissal of the appeal.

The motion to dismiss did not include PetroEcuador's appeal of the judgment against it on its cross-claim against the TIBER Interests. Therefore, those issues remain pending and are unaffected by the settlement except to the extent PetroEcuador assigned its rights in that claim to BP as part of the settlement. The contractual assignment of rights, however, does not affect the analysis of the issues on appeal. The TIBER Interests' appeal was unaffected by the settlement.

II

The TIBER Interests challenge the district court's finding that BP delivered the gasoline cargo to the M/T TIBER in good order and condition without any hidden defects. With regard to this issue, the TIBER Interests argue that (1) the district court applied an improper legal standard and (2) the district court's factual findings were clearly erroneous.

The district court did not apply an improper legal standard to BP's claim against the TIBER Interests. Earlier in this case, the district court granted PetroEcuador's summary judgment against BP, but this court reversed the interlocutory summary judgment on appeal, holding that PetroEcuador could only recover against BP if BP "provided goods that it 'knew or could not have

3

been unaware' were defective when they 'passed over the ship's rail.'"[1] On remand, the district court determined that the language in our earlier opinion created a "presumption that the cargo had no hidden defect." The TIBER Interests argue that the district court improperly applied this presumption against them despite the fact that they were not a party to the prior appeal. The district court, however, only applied this presumption to BP's claims against PetroEcuador.

In evaluating BP's claims against the TIBER Interests, the district court applied bailment law. In a bailment claim, the burden of proof is on the bailor, and to make its prima facie case, the bailor must "prov[e] that the [cargo] was delivered to the bailee in good condition and damaged while in [the bailee's] possession . . . and the duty then devolves upon the bailee to go forward with the evidence and show affirmatively that he exercised ordinary care."[2] The district court found that BP's evidence "establishe[d] a prima facie case against the TIBER on BP's bailment claim" and the TIBER Interests failed to rebut BP's prima facie case. The district court applied proper bailment law to BP's claim.

While BP's claim against the TIBER Interests is possibly governed by the Carriage of Goods by Sea Act (COGSA), the TIBER Interests have not challenged the district court's conclusion that bailment law applies to BP's claim. This court, therefore, need not reach the issue of whether the district court erred in applying bailment law instead of COGSA. Because the district court did not apply an improper presumption to BP's claim against the TIBER Interests, the

---

[1]BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador, 332 F.3d 333, 338-39 (5th Cir. 2003) (quoting United Nations Convention on Contracts for the International Sale of Goods (CISG), art. 40, Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 671 (1983), reprinted at 15 U.S.C. app. (entered into force Jan. 1, 1988)).

[2]Stegemann v. Miami Beach Boat Slips, Inc., 213 F.2d 561, 564 (5th Cir. 1954) (citations omitted).

TIBER Interests' first argument fails.

With regard to the district court's finding that BP delivered the cargo to the M/T TIBER in good order and condition without any hidden defects, this court will not set aside a district court's factual findings unless they are clearly erroneous.[3]  A finding is clearly erroneous when the appellate court, viewing the evidence in its entirety, "is left with the definite and firm conviction that a mistake has been committed."[4]  If the district court's finding is plausible in light of the record viewed as a whole, the court of appeals cannot reverse even though, if sitting as the trier of fact, it would have weighed the evidence differently.[5] "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[6]  We conclude, after a complete review of the record, that there was ample evidence to support the district court's finding that BP delivered the cargo to the M/T TIBER in good order and condition without any hidden defects.

### III

The TIBER Interests next challenge BP's standing to recover against them.  The TIBER Interests argue that BP is not the real party in interest to its claim against the TIBER Interests because title and risk of loss of the cargo passed to PetroEcuador upon delivery to the TIBER.  BP does, however, have standing to recover against the TIBER Interests under the bill of lading.  A bill of lading is "the contract of carriage between the shipper and the carrier, [and

---

[3]FED. R. CIV. P. 52(a); see also Anderson v. Bessemer City, 470 U.S. 564, 573-75 (1985).

[4]Anderson, 470 U.S. at 573 (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

[5]Id. at 573-74.

[6]Id. at 574.

it] continues to govern the rights and obligations of the parties until the delivery of the cargo."[7] Because BP was the consignee in the bill of lading, it remained a party-in-interest even after the cargo was loaded onto the M/T TIBER.[8] BP, therefore, had standing to sue the TIBER Interests. This conclusion is supported by the fact that the TIBER Interests were not exposed to a double recovery.[9]

## IV

PetroEcuador contends that the district court erroneously decided its cross-claim against the TIBER Interests "under the theory of bailment" when the cross-claim was actually a third-party beneficiary claim. The TIBER Interests argue that (1) PetroEcuador's cross-claim, as pled, is a bailment claim and not a third-party beneficiary claim (2) PetroEcuador's cross-claim is time-barred by COGSA, and (3) even if a third-party beneficiary claim was properly before the district court, the claim fails as a matter of law because PetroEcuador was not a third-party beneficiary to the contract between BP and the TIBER Interests.

Even if we assume that PetroEcuador's cross-claim was a third-party beneficiary claim, PetroEcuador cannot prevail on that claim as a matter of law.

---

[7]Metro. Wholesale Supply, Inc. v. M/V ROYAL RAINBOW, 12 F.3d 58, 61 (5th Cir. 1994).

[8]See McKinlay v. Morrish, 62 U.S. (21 How.) 343, 355 (1858) ("[F]rom the nature of the contract of a bill of lading, the consignee has a right to sue, in a court of admiralty, for any breach of [the bill of lading]."); see also Prevor-Mayorsohn Caribbean, Inc. v. P.R. Marine Mgmt., 620 F.2d 1, 4 (1st Cir. 1980) ("Long-established admiralty practice allows either 'an owner or consignee (to) recover damage to the cargo.'" (quoting Elia Salzman Tobacco Co. v. SS Mormacwind, 371 F.2d 537, 540 (2d Cir. 1967))).

[9]See Prevor-Mayorsohn Caribbean, Inc., 620 F.2d at 4 ("[C]ourts have often looked to the practicalities of the situation in assessing the likelihood that a carrier might ultimately be exposed to a double recovery and, when satisfied that double recovery is not a threat, and that the plaintiff has a proper interest in maintaining the action, have allowed that plaintiff to maintain that action." (citations omitted)).

6

Both PetroEcuador and the TIBER Interests cite Texas and federal maritime law regarding third-party beneficiaries, and each party agrees that the requirements are the same under both. In order to recover as a third-party beneficiary to a contract, the plaintiff must prove that the parties to the contract intended to benefit the third-party as evidenced "solely from the language of the contract."[10] In this case, the contract between BP and the TIBER Interests consists of the bill of lading and the charter party. PetroEcuador cannot recover as a third-party beneficiary to the contract between BP and PetroEcuador because there is no contractual language in either the bill of lading or the charter party evidencing a clear intent by BP and the TIBER Interests to benefit PetroEcuador.[11] PetroEcuador, therefore, cannot show that BP and the TIBER Interests intended for PetroEcuador to benefit by their written agreements.

\*　　　\*　　　\*

We AFFIRM the district court's judgment in favor of BP on its claims against the TIBER Interests, and we AFFIRM the district court's judgment against PetroEcuador on its cross-claim against the TIBER Interests.

---

[10] Palma v. Verex Assurance, Inc., 79 F.3d 1453, 1457 (5th Cir. 1996); see also Atl. & Gulf Stevedore, Inc. v. Revelle Shipping Agency, Inc., 750 F.2d 457, 459 & n.3 (5th Cir. 1985).

[11] See MCI Telecomm. Corp. v. Tex. Util. Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999) ("The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied."(citation omitted)).