A92A0693. ROPAR v. TRAVELERS INSURANCE COMPANY.
A92A0694. ALLSTATE INSURANCE COMPANY v. TRAVELERS INSURANCE COMPANY.
(422 SE2d 34)

COOPER, Judge.

Appellant Ropar ("Ropar"), plaintiff below, and cross-appellant Allstate Insurance Company ("Allstate"), one of several co-defendants below, appeal from the trial court's grant of summary judgment for appellee Travelers Insurance Company ("Travelers" or "appellee"), another co-defendant below.

Ropar was employed as a property damage consultant in Florida by U. S. International Claim Management ("employer") and was provided with an automobile for his use. Travelers issued an automobile policy, effective January 1989 through January 1990, under which employer was a named insured and various vehicles, including the automobile provided Ropar by employer, were specified as insured vehicles. In May 1989, Ropar traveled to Atlanta to investigate a fire loss. Although Ropar drove to Atlanta in the vehicle provided and insured by his employer, he did not use that vehicle to drive to the fire site. His employer had entered into a contract with String and Associates ("String") to provide Ropar with support services. Ropar submitted evidence that as part of this contract String promised employer to provide Ropar with the services of an automobile as well as the services of an adjuster, and that in billing employer, String separately accounted for the costs of automobile services. The String adjuster picked Ropar up and drove him to and from the fire site, and it was on the return trip that the accident on which this suit is based — a hit and run — occurred, injuring Ropar. Ropar filed a "John Doe"

action and served (1) State Farm Insurance, his own uninsured motorist carrier, (2) Allstate, String's uninsured motorist carrier, and (3) Travelers. Only the Travelers policy is at issue here.

For both liability and uninsured motorist purposes the Travelers policy insures the named insured (employer), as well as anyone using any "covered auto" with the named insured's (employer's) permission. "Covered auto" is defined differently for liability and uninsured motorist coverage, however. With respect to liability coverage, "covered auto" is defined as any auto the named insured owns, hires, or borrows, but with respect to uninsured motorist coverage, "covered auto" is defined to encompass only any auto owned by the named insured. Thus, the Travelers policy purports to exclude from uninsured motorist coverage persons using vehicles hired or borrowed by the named insured with the named insured's permission, even though those persons would be entitled to liability coverage. Because Ropar's theory of recovery is that String's auto was "hired" by employer, this difference in coverage is crucial to his case. If the narrower definition of "covered auto" for uninsured motorist coverage is enforceable under Florida law, the grant of summary judgment for Travelers on this basis was correct. If not, the trial court erred, and further consideration of whether String's auto was "hired" by employer is necessary. (Because the policy in question was issued and delivered in Florida, Florida law governs its meaning and effect. See *Howard v. Doe*, 174 Ga. App. 415 (330 SE2d 370) (1985).)

1. Prior to 1984, the Florida Uninsured Motorist Statute provided in pertinent part: "No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemented thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." Fla. Stat. Ann. § 627.727 (1) (1981). The Florida Supreme Court held that the predecessor to this provision (Fla. Stat. Ann. § 627.0851 (1967)) required that a policy's uninsured motorist coverage be as broad as that for liability, so that anyone covered for liability would also be entitled to uninsured motorist coverage. *Mullis v. State Farm Mut. Auto. Ins. Co.*, 252 S2d 229 (Fla. 1971). "[U]ninsured motorist coverage is statutorily required to be provided for all persons who are insured under a policy for basic liability coverage. . . . [E]xclusions from uninsured motorist coverage which is required under the foregoing . . . are legally impermissible." *Auto-Owners Ins. Co. v. Bennett*, 466 S2d 242, 243 (Fla. App. 2 Dist. 1984). Assuming for purposes of this discussion that Ropar's employer

"hired" the vehicle in which Ropar was riding at the time of the accident, Ropar was an insured person under the liability provisions of the Travelers policy. Accordingly, under *Mullis* and *Bennett* he would also have to be covered by the uninsured motorist portion of the policy, and any provisions to the contrary would be unenforceable.

Appellee nonetheless argued, and the trial court nonetheless held, that the limitation on uninsured motorist coverage in the Travelers policy is enforceable because *Mullis* has been abrogated or at least severely limited by a 1984 amendment to the Uninsured Motorist Statute which changed the above-quoted provision in the following way: "No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any *specifically insured or identified* motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." Fla. Stat. Ann. § 627.727 (1) (Supp. 1992) (emphasis supplied to show added language). Travelers' position is that, after the amendment, liability and uninsured motorist coverage need only be equal in scope where the accident on which the claim is based involves a vehicle specifically insured or identified in the policy.

Appellee's argument that *Mullis* was abrogated or severely limited by the 1984 amendment is belied by recent case law, however. The appellate courts of Florida continue to cite *Mullis* for the proposition that the scope of persons and accidents covered by the uninsured motorist provisions of a policy cannot be narrower than that covered for liability. "Since our decision in *Mullis*, the courts have consistently followed the principle that if the liability portions of an insurance policy would be applicable to a particular accident, the uninsured motorist provisions would likewise be applicable. . . . [Cits.]" *Valiant Ins. Co. v. Webster*, 567 S2d 408, 410 (Fla. 1990). "Exclusions to UM [uninsured motorist] coverage are not enforceable if the injured person is covered by the BIL [bodily injury liability] provisions of the policy." *Travelers Ins. Cos. v. Chandler*, 569 S2d 1337, 1339 (Fla. App. 1 Dist. 1990) (citing *Mullis*).

Moreover, the placement of the amending language itself does not support appellee's argument that the amendment limits the equal coverage requirement to claims based on accidents involving vehicles specifically insured or identified. Indeed, it seems to us that the amending language was intended to limit the type of policy to which the requirement applies rather than the scope of the requirement. Contrary to Travelers' suggestion, our interpretation does not render the amendment "mere surplusage." *Ellsworth v. Ins. Co. of N. A.*, 508

S2d 395 (Fla. App. 1 Dist. 1987), a case cited and relied upon by Travelers, demonstrates exactly the type of situation the amendment was intended to address. The plaintiffs in *Ellsworth* sought recovery for uninsured motorist benefits, not under an automobile policy, but under their business's comprehensive general liability policy. This policy provided limited, incidental liability coverage for vehicles used by the business, but did not specifically insure or identify any such vehicle. It was this type of policy the 1984 amendment freed from applicability of the *Mullis* requirement by limiting the applicability of the Uninsured Motorist Statute to "classic automobile insurance policies" which specifically insure and identify one or more vehicles. Id. at 397; accord *State Farm Fire & Cas. Co. v. Polgar*, 551 S2d 549 (Fla. App. 4 Dist. 1989). The Travelers policy in this case is just such a "classic automobile insurance policy." It is a vehicle liability insurance policy delivered in Florida, insuring specifically identified vehicles registered or principally garaged in Florida. It is therefore the type of policy to which the Florida Uninsured Motorist Statute applies, regardless of the nature of the accident on which a particular claim is based.

Our conclusion that the 1984 amendment did not limit the *Mullis* mandate to accidents involving vehicles specifically insured or identified in the policy is further supported by a 1987 amendment to the same statute. See Fla. Stat. Ann. § 627.727 (9). This amendment provides that certain specified limitations on uninsured motorist coverage may be enforced if the insurer has a form signed by the named insured accepting the limitation, and almost all of the permissible limitations listed deal with situations involving vehicles not specifically insured or identified. See, e.g., Fla. Stat. Ann. § 627.727 (9) (c). If appellee's argument regarding the intended effect of the 1984 amendment were correct, of course, these portions of the 1989 amendment would be unnecessary.

For these reasons, we reverse the trial court's grant of summary judgment based on the enforcement of a definition of "covered auto" more restrictive for uninsured motorist coverage than for liability coverage.

2. In support of its motion for summary judgment, Travelers also argued that Ropar would not be covered by the liability provisions of the policy anyway, because the car in which he was riding at the time of the accident was not a car "hired" by employer as a matter of law. The Travelers policy does not define "hired." Where a term is used in an insurance policy without being defined, it will be given its generally understood and accepted meaning, and if there is any uncertainty it will be construed against the insurer and in favor of the insured. *Stuyvesant Ins. Co. v. Butler*, 314 S2d 567, 571 (Fla. 1975).

Black's Law Dictionary defines the verb "hire" as "[t]o purchase

the temporary use of a thing, or to arrange for the labor or services of another for a stipulated compensation." Black's Law Dictionary (5th ed. 1979). This broad definition of "hire" is also reflected in the Florida case law. In *Stonewall Ins. Co. v. Heter*, 438 S2d 950 (Fla. App. 4 Dist. 1983), the court held there was sufficient evidence to support the conclusion that an employee injured while driving his own car was injured in a car "hired" by his employer where the employer required daily use of the employee's car for company business as a condition of employment. And in *American Employers Ins. Co. v. Yeomans*, 356 S2d 1281 (Fla. App. 2 Dist. 1978), hiring was viewed as the use of something for monetary consideration. "Although the record is somewhat unclear as to the exact nature of the agreement between Construction and Yeomans [the parties to the alleged hiring] . . . the record reveals that there was monetary consideration for Yeomans' use of the trailer and not a mere gratuitous loan thereof. Since there was a monetary consideration, Yeomans 'hired' the trailer. . . ." Id. at 1286. Travelers cites several cases for the proposition that a vehicle cannot be "hired" unless there is a separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control. See, e.g., *Sampay v. Morton Salt Co.*, 482 S2d 752 (La. Ct. App. 1985). The cases cited by Travelers are from different jurisdictions and involve different circumstances, however, and are not persuasive in light of the broad view of "hire" taken by the appellate courts of Florida as shown in the cases cited above.

Ropar has submitted testimony from David String that part of String's contractual agreement with employer was to provide Ropar with transportation services, and that String's bill to employer included a specific charge for the use of the automobile. This evidence is sufficient to raise a genuine issue of material fact as to whether the vehicle in which Ropar was riding at the time of the accident was a vehicle "hired" by employer, and thus a "covered auto" under the terms of the policy. Thus, a grant of summary judgment based on Travelers' alternative argument would also be improper.

*Judgments reversed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED JULY 16, 1992 —
RECONSIDERATION DENIED JULY 30, 1992 —

*Gorby, Reeves, Moraitakis & Whiteman, Michael J. Gorby, Stephanie L. Scheier*, for Ropar.

*Irwin, Bladen, Baker & Russell, R. Chris Irwin*, for Travelers.

*Chambers, Mabry, McClelland & Brooks, Clyde E. Rickard III*,

for Allstate.