708 So.2d 679 (1998)
Lila GILMORE, Appellant,
v.
ST. PAUL FIRE AND MARINE INSURANCE, Appellee.
No. 97-509.
District Court of Appeal of Florida, First District.
April 9, 1998.
James F. McKenzie and John S. Penton, Jr., of McKenzie & Soloway, P.A., Pensacola, for Appellant.
Marsha W. Montgomery and Belinda B. de Kozan of Fuller, Johnson & Farrell, Pensacola, for Appellee.
*680 JOANOS, Judge.
Lila Gilmore, appellant, appeals an amended order granting summary final judgment to appellee, St. Paul Fire and Marine Insurance Company (St. Paul). The issue presented on appeal is whether appellant is entitled to protection under the terms and conditions of her employer's policy of insurance with St. Paul, for purposes of uninsured/underinsured motorist benefits. We reverse.
On March 16, 1993, appellant incurred serious personal injuries in a motor vehicle accident. The accident occurred during the course and scope of appellant's employment as a home health nurse with Home Health Care of Pensacola. Since appellant's injuries exceeded the policy limits of the driver at fault in the accident, she filed suit to recover underinsured motorist benefits under the policy of insurance issued to her employer by St. Paul. The employer, Home Health Care of Pensacola, requires its employees to use their personal automobiles for travel to and from the homes of the employer's clients. When the accident occurred, appellant was driving her automobile to the home of a Home Health Care client.
Appellant filed a motion for summary judgment on the issue of coverage. Appellant maintained that the language of the subject policy provides uninsured/underinsured motorist protection to an employee of Home Health Care who is injured while using a personal vehicle in the conduct of the employer's business. St. Paul also filed a motion for summary judgment. St. Paul asserted that under the unambiguous language of the policy, appellant is not an insured, and is not otherwise entitled to recover underinsured motorist benefits under the policy of insurance issued by St. Paul to appellant's employer, Home Health Care of Pensacola.
The interpretation of a document generally is a question of law rather than a question of fact. "If an issue of contract interpretation concerns the intention of parties, that intention may be determined from the written contract, as a matter of law, when the nature of the transaction lends itself to judicial interpretation." Peacock Construction Co., Inc. v. Modern Air Conditioning, Inc., 353 So.2d 840, 842 (Fla.1977). See also Russell & Axon v. Handshoe, 176 So.2d 909, 912 (Fla. 1st DCA 1965), cert. denied, 188 So.2d 317 (Fla.1966)("duty of construing a contract usually is that of the court and not the jury").
"Words in an instrument should be given their natural or most commonly understood meaning." Tropabest Foods, Inc. v. State, Department of General Services, 493 So.2d 50, 51-52 (Fla. 1st DCA 1986). The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties. To that end, the interpretation which provides the more reasonable and probable contract should be adopted. American Employers' Insurance Co. v. Taylor, 476 So.2d 281, 283-284 (Fla. 1st DCA 1985). An ambiguity arises when more than one interpretation may fairly be given to a policy provision. Ambiguous policy provisions should be construed against the drafter, i.e., the insurer. Ellsworth v. Insurance Company of North America, 508 So.2d 395, 400 (Fla. 1st DCA 1987).
In Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229, 233-234 (Fla.1971), the court instructed:
The public policy of the uninsured motorist statute [now § 627.727(1)] is to provide uniform and specific insurance benefits to members of the public to cover damages for bodily injury caused by the negligence of insolvent or uninsured motorists and such statutorily fixed and prescribed protection is not reducible by insurers' policy exclusions and exceptions any more than are the benefits provided for persons protected by automobile liability insurance secured in compliance with the Financial Responsibility Law.
Insurers or carriers writing automobile liability insurance and reciprocal uninsured motorist insurance are not permitted by law to insert provisions in the policies they issue that exclude or reduce the liability coverage prescribed by law for the class of persons insured thereunder who are legally entitled to recover damages from owners or operators of motor vehicles because of bodily injury.
The court further held the statute requires the inclusion of uninsured motorist coverage *681 in all policies issued in Florida for the benefit of those insured thereunder. The only exception permitted by the statute is where the named insured rejects the coverage. 252 So.2d at 238.
Again, in Salas v. Liberty Mutual Fire Insurance Co., 272 So.2d 1, 5 (Fla.1972), the court held:
the intention of the Legislature, as mirrored by the decisions of this Court, is plain to provide for the broad protection of the citizens of this State against uninsured motorists. As a creature of statute rather than a matter for contemplation of the parties in creating insurance policies, the uninsured motorist protection is not susceptible to the attempts of the insurer to limit or negate that protection. (Emphasis supplied).
Thereafter, in Valiant Insurance Co. v. Webster, 567 So.2d 408, 410 (Fla.1990), the court observed that since Mullis, courts have consistently followed the principle that if the liability portions of an insurance policy would be applicable to a particular accident, the uninsured motorist provisions would be applicable as well. Conversely, if the liability provisions of a policy do not apply to a given accident, the uninsured motorist provisions of that policy would not apply (except with respect to occupants of the insured auto).
In Travelers Insurance Companies v. Chandler, 569 So.2d 1337, 1339 (Fla. 1st DCA 1990), this court reiterated the rule pronounced in Valiant and Mullis, i.e., that uninsured motorist coverage must be provided to all persons who are insured under a policy for basic liability coverage. The court further held that exclusions from uninsured motorist coverage are not enforceable if the injured person is covered by the bodily injury liability provisions of the policy. Accord Mosca v. Globe Indemnity, 693 So.2d 674, 675 (Fla. 4th DCA), review denied, 699 So.2d 1373 (Fla.1997). In Mosca, the court reversed a summary judgment for the insurer under policy provisions and facts similar to those in this case, holding:
the statutorily-prescribed UM coverage may not be limited by providing a narrower definition of "covered autos" in the UM policy than in the liability policy. Rather, the definition of "covered autos" provided in the liability policy also determines the autos "covered for purposes of mandatory UM coverage."
693 So.2d at 675. See also Lewis v. Cincinnati Insurance Co., 503 So.2d 908, 909-910 (Fla. 5th DCA), review denied, 511 So.2d 297 (Fla.1987); Lee v. National Union Fire Insurance Co. of Pittsburgh, 469 So.2d 849, 851 (Fla. 3d DCA), review denied, 480 So.2d 1295 (Fla.1985).
The policy here at issue provides "Auto Liability Protection" limits of $1,000,000 for each accident. The "Covered Autos" section of the liability provisions of the policy refers to "Any Auto." The following definitions and explanations are included in the Auto Liability Protection section of the policy:
Which Autos Are Covered
Any auto means any owned, rented, leased or borrowed auto. It includes hired, nonowned, newly acquired, replacement and temporary substitute autos.
....
Scheduled autos means any auto you own that's described in the Auto Schedule....
....
Nonowned autos means any auto that:
you don't own, hire, rent, lease or borrow; and is used in the conduct of your business. It includes autos owned by your employees or partners or members of their households. But only while such autos are being used in the conduct of your business. (Emphasis supplied).
Who is Protected Under This Agreement
....
Corporation or other organization.. If you are named in the Introduction as a corporation or other organization, you are a protected person for the use of a covered auto. Also, your executive officers and directors are protected persons. But only for the use of a covered auto. Also, your stockholders are protected persons, but only for their liability as your stockholders.
....
However, we won't consider the following to be a protected person:

*682 ....
An employee of yours or a member of an employee's household if the covered auto is owned by that employee or member of that employee's household.
The "Auto Uninsured Motorists Protection" section of the policy then indicates that only "Scheduled Autos" have uninsured motorist coverage. The vehicle listed under the "Auto Schedule" section is a 1991 Dodge Ram. The Uninsured and Underinsured Motorists Protection section of the policy further states:
Which Autos Are Covered
The Coverage Summary shows which autos are covered under this agreement.
Scheduled autos. If this is shown in the Coverage Summary, the autos listed in the Schedule are the covered autos at the time the agreement goes into effect.
....
Any owned auto. If this is shown in the Coverage Summary, we'll cover any auto that you own.
Who is Protected Under This Agreement
....
Anyone else in a covered auto. Anyone else while in a covered auto or a temporary substitute auto is protected.
In this case, the trial court found the policy language to be free of ambiguity. We cannot agree. In the "Auto Coverage Summary," the policy indicates that "Any Auto" is included within the "Covered Autos" category for purposes of "Auto Liability Protection." The definition of "Covered auto" in the liability coverage section of the policy states:

Covered auto means the type or types of autos shown in the Coverage Summary and described in the Which Autos Are Covered section.
Under the "Which Autos Are Covered" section, "Nonowned Autos" are defined as autos owned by the corporation's employees "only while such autos are being used in the conduct of your business." It is undisputed that appellant was using her auto in the conduct of the corporate employer's business when the accident occurred. However, under the section captioned "Who Is Protected Under This Agreement," the policy purports to exclude an employee who owned the covered auto used in the conduct of the employer's business from consideration as a protected person. Thus, the "covered autos" section of the liability provisions of the policy conflict with the "protected person" provisions of the same section, insofar as those provisions pertain to an employee's nonowned auto while the auto is being used in the conduct of the employer's business.
In accordance with the applicable principles of contract construction, we are obligated to construe the ambiguities in the policy language against the drafter, and in a manner which will provide the broadest coverage for uninsured or underinsured motorists. We believe a reasonable construction of the liability provisions of the policy would afford coverage to employees of Home Health Care of Pensacola who are injured while driving their personal vehicles in the course and scope of their employment. Since we have determined the liability provisions of the policy afford coverage to an employee under the fact scenario existing in this case, the insurer's attempt to negate uninsured/underinsured motorist coverage for such an employee must be rejected. See Valiant; Mullis.
Accordingly, the amended order granting summary final judgment in favor of St. Paul is reversed, and the cause is remanded for further proceedings.
BOOTH and VAN NORTWICK, JJ., concur.