ALAN, SEAN, AND KOULE, INC., d/b/a ASK, Inc. and ASK Corporation, a Florida corporation, Plaintiff,

v.

The S/V "CORSTA V," her boilers, engines, tackle, equipment, freight, appliances, appurtenances, plans, drawings, schematics, sails, tenders, etc., in rem, Defendant.

Alan, Sean, And Koule, Inc., d/b/a ASK, Inc. and ASK Corporation, a Florida corporation, Plaintiff,

v.

Corsta, LLC., a Cayman Island Corporation, and the S/V "Corsta V," her boilers, engines, tackle, equipment, freight, appliances, appurtenances, plans, drawings, schematics, sails, tenders, etc., in rem, Defendants.

No. CV402–174.

United States District Court,
S.D. Georgia,
Savannah Division.

July 22, 2003.

1368

Edward L. Newberry, Jr., Ellis, Painter, Ratterree & Bart, LLP, Savannah, GA, Michael W. McLeod, Seiden, Alder & Matthewman, PA, Boca Raton, FL, Christopher Rogers Fertig, Fertig & Gramling, Ft. Lauderdale, FL, for Plaintiff.

Arnold C. Young, Hunter, Maclean, Exley & Dunn, PC, Marc Gordon Marling, Hunter, Maclean, Exley & Dunn, Savannah, GA, Robin Corwin Campbell, Adorno & Yoss, Ft. Lauderdale, FL, Eric Allan Lee, Lee & Amtzis, PL, Deerfield Beach, FL, for Defendants.

## *ORDER*

MOORE, District Judge.

Before the Court are Plaintiff's Motions for Summary Judgment. (Docs. 24 & 35). After careful consideration, the Court finds that Plaintiff's motions must be DENIED.

## BACKGROUND

These actions involve a dispute over repairs made to the S/V Corsta V ("Vessel"). On March 1, 2001, the parties entered into a Ship Improvement Contract by which Corsta, LLC ("Corsta"), the owner of the Vessel, hired Plaintiff to perform certain repairs to the Vessel. The repairs were expected to take six to eight months to complete.[1] The repairs began shortly after the contract was signed and included repairs to the Vessel's electrical wiring and hydraulics. Because the Vessel was missing as-built drawings of the electric and hydraulic systems, new ones had to be made as part of the repair process. In addition, the repairs included joinery work.

When the repairs first began in March 2001, Anthony Priest served as the Captain of the Vessel. As Captain, Mr. Priest supervised the work being done to the

---

1. While the contract in question was formed with Plaintiff, some of the invoices submitted to Corsta for payment were submitted by TPL Corporation ("TPL"). TPL is a corporation owned by Alan McKenna and Koule Lyras, who are also part owners of Plaintiff. TPL was formed in March 2001 when the third partner of Plaintiff company left the company and Mr. McKenna and Mr. Lyras decided to form a new corporation. TPL performs the same kind of work that Plaintiff company did. While Plaintiff company is still active, all of its contracts have been completed except the contract in question here.

Vessel, inspected it, and dealt with any problems that arose. He also reviewed the invoices submitted by Plaintiff and compared the charges in the invoices with the work that had been done. If he agreed with the work done, he approved the invoices. If not, he voiced his complaint to Alan McKenna, who would address those complaints.[2] During Mr. Priest's tenure as Captain of the Vessel, all invoices submitted by Plaintiff or TPL Corporation were paid in full. Mr. Priest left his post as Captain of the Vessel on May 3, 2001 and has no personal knowledge of Plaintiff's work after that date.

Mr. Priest was replaced as Captain by Peter M. Lambert, who began his employment in the first or second week of May 2001. (Lambert Aff. ¶ 8). Mr. Lambert performed the same job duties as Mr. Priest with respect to the supervision and inspection of Plaintiff's work. According to his affidavit, Mr. Lambert inspected all the invoices submitted by Plaintiff and had no disputes with Plaintiff's work. (*Id.* at ¶ 19). Mr. Lambert left his post as Captain of the Vessel around the second week of October 2001.

During Mr. Lambert's tenure as Captain of the Vessel, questions arose as to some of the invoices submitted by Plaintiff. Brian Holland, the Director of Finance at Equity Merchant Banking Corporation ("EMB"),[3] began overseeing the invoices for payment submitted by Plaintiff and TPL in late summer 2001. At that time, Mr. Holland began to question some of the invoices submitted, and continued raising questions through September and October. (Holland Aff. ¶¶ 6, 8). On October 12, 2001, in response to Mr. Holland's inquiries, Plaintiff submitted two reports of work performed through October 12, 2001, and a number of invoices. Plaintiff also inquired as to when two invoices, which had been presented almost 30 days before, would be paid.

On October 18, 2001, Corsta sent a fax to Plaintiff seeking supporting documentation for a number of invoices and directed Plaintiff to contact Mr. Holland with any questions. On November 1, 2001, Corsta sent Plaintiff a fax, again asking for supporting documentation for certain invoices. On November 8, 2001, Mr. Holland sent Plaintiff a letter stating that Corsta still had not received the supporting documentation. The letter reflects that Corsta had, however, received a binder of photographs, for which Plaintiff charged Corsta $1,470.90. The letter further informed Plaintiff that it was no longer authorized to do work for Corsta and that Corsta would not pay the outstanding invoices, totaling $41,897.70, until its questions concerning Plaintiff's work had been resolved.[4] Corsta's questions were never resolved to its satisfaction. As a result, Corsta filed an action against Plaintiff in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida on November 13, 2001. Corsta sought a return of Corsta's schematics and drawings, which were in Plaintiff's possession, and an accounting as to the allegedly outstanding invoices.

2. Mr. Priest testified in his deposition that he exercised his right to complain over "a few" disputes about time charged in the invoices and the workmanship of the repairs. According to Mr. Priest, those disputes were resolved. (Priest Depo. p. 52).

3. Equity Merchant Banking is a company owned by Randy Lenz, who is also the owner of Corsta. All invoices submitted by Plaintiff or TPL were submitted to EMB and Mr. Priest stated in his deposition that Corsta employees "answered" to EMB. (Priest Depo. p. 19–20).

4. The outstanding invoices were issued between September 17, 2001 and November 6, 2001. The invoices contained charges for materials purchased and work performed between August 20, 2001 and October 29, 2001.

Plaintiff wished to file a counterclaim in the Florida state court action to enforce a maritime lien, which Plaintiff claims was created in its favor under the General Maritime Law of the United States by its performance of repairs on the Vessel. However, given the exclusivity of federal in rem maritime jurisdiction, Plaintiff could not assert its claim in the Florida state court action. Therefore, on January 7, 2002, Plaintiff instituted an action in the United States District Court for the Southern District of Florida against Corsta and the Vessel. Plaintiff's Complaint in the Florida federal action sought to foreclose Plaintiff's alleged maritime lien for services rendered by arresting the Vessel pursuant to the Federal Maritime Lien Act. 46 U.S.C. §§ 31301(4)-(5). The Florida federal action included both an in rem claim against the Vessel and an in personam claim against Corsta. Specifically, Plaintiff's Complaint sought payment through condemnation and sale of the Vessel or from Corsta personally, of damages in excess of $41,897.70 plus interest, attorneys' fees, and collection costs.

After filing the Florida federal action, Plaintiff learned that the Vessel had left the geographic boundaries of the United States District Court for the Southern District of Florida. As a result, the District Court for the Southern District of Florida did not have jurisdiction over Plaintiff's in rem claim. When the Vessel was discovered in the geographic boundaries of the Southern District of Georgia, Plaintiff filed a second federal action against the Vessel in this Court on January 10, 2002. This action asserted only Plaintiff's in rem claim against the Vessel and was numbered CV402–007.

On July 16, 2002, the District Court for the Southern District of Florida transferred the case before it to this Court on forum non conveniens grounds. The transferred case was given the number CV402–174.

On October 30, 2002, Plaintiff filed motions for summary judgment in both CV402–007 and CV402–174. Corsta filed its responses to both motions on October 18, 2002. Plaintiff then filed its replies on November 7, 2002. On March 24, 2003, because of the similarity between the two cases, this Court ordered that they be consolidated. Since Plaintiff has asserted the same arguments for summary judgment in each case and because each case is based on the same set of operative facts, the Court will address both motions simultaneously.

## ANALYSIS

### I. *Standard of Review*

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56 advisory committee's note). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384, 1387–88 (11th Cir.1991). The substantive law governing the action determines

whether an element is essential. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *DeLong Equip., Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1505 (11th Cir.1989).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Thompson v. Metropolitan Multi–List, Inc.,* 934 F.2d 1566, 1583 n. 16 (11th Cir. 1991); *Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. However, if the nonmoving party's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then the court must enter summary judgment in the moving party's favor. *Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir.1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [then] there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512; *Johns v. Jarrard,* 927 F.2d 551, 556 (11th Cir.1991).

In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992); *Ryder Int'l. Corp. v. First Am. Nat'l. Bank,* 943 F.2d 1521, 1523 (11th Cir.1991). The Court must avoid weighing conflicting evidence. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513; *McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 934 (11th Cir.1987). A mere "scintilla" of evidence supporting the opposing party's position, however, will not suffice. *See, e.g., Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton,* 883 F.2d 923, 933–34 (11th Cir. 1989) (citation omitted). In light of this standard, the Court will now address Plaintiff's arguments for summary judgment.

## II. *Discussion*

In its motions, Plaintiff argues that summary judgment should be granted in its favor because Corsta is liable as a matter of law (1) based on the statements of its captains and (2) based on its failure to object to the submitted invoices within 30 days of performance of the work. Corsta responds that it is not bound by the former captains' statements and that its failure to object within 30 days of performance of the work did not waive its ability to contest the invoices. The Court agrees with Corsta.

### A. *Former Captains' Statements*

Plaintiff argues that under maritime law certain statements by former captains Priest and Lambert serve to bind the Vessel and Corsta, therefore requiring a grant of summary judgment in Plaintiff's favor. Specifically, Plaintiff contends that both

Mr. Priest and Mr. Lambert have admitted in their deposition and affidavit, on Corsta's behalf, that Plaintiff should be paid in full for the work performed. In support of its argument, Plaintiff cites a number of Fifth Circuit cases that stand for the proposition that declarations or statements made by the captain or master of a ship are admissible as evidence against the owner. *Cox v. Esso Shipping Co.*, 247 F.2d 629 (5th Cir.1957); *Jackson Marine Corp. v. Blue Fox*, 845 F.2d 1307, 1309–10 (5th Cir.1988); *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir.1986); *Avera v. Florida Towing Corp.*, 322 F.2d 155, 164 (5th Cir.1963). These cases involve statements made by captains during the employment relationship.

A captain's ability to bind the owners by his statements and acts arises from the captain's status as an agent of the owners. *See Jackson Marine*, 845 F.2d at 1309–1310 (basing master's ability to bind on his authority as agent and representative of owner). Indeed, federal maritime law embraces the principles of the law of agency. *Naviera Neptuno S.A. v. All Int'l Freight Forwarders, Inc.*, 709 F.2d 663, 665 (11th Cir.1983); *Hoechst Celanese Corp. v. M/V Trident Amber*, 1992 WL 179219, *4 (S.D.Ga.1992); *West India Industries, Inc. v. Vance & Sons AMC–Jeep*, 671 F.2d 1384, 1387 (5th Cir.1982). To resolve questions of agency law, which "is a matter of federal common law[,] ... the Court should first look to general principles of agency." *Global Towing L.L.C. v. Marine Tech. Servs.*, 2000 WL 351531, *2 (E.D.La.2000).

One source of general principles of agency to which a federal court can turn is the Restatement (Second) of Agency. *See Atl. & Gulf Stevedores v. Revelle Shipping Agency, Inc.*, 750 F.2d 457 (5th Cir. 1985) (applying Restatement (Second) of Agency to maritime context). According to the Restatement (Second) of Agency:

> In an action between the principal and a third person, statements of an agent to a third person are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, any statements concerning the subject matter.

Restatement (Second) of Agency § 236 (1992). Therefore, statements made by captains with authority can be binding on the ship's owners.

An agent can have two types of authority—actual and apparent. Actual authority is created "by a manifestation to the agent," while apparent authority is created "by a manifestation to third persons." Restatement (Second) of Agency § 124A cmt. a. (1992). Here, the parties do not dispute that Mr. Priest had both actual and apparent authority while employed as captain of the Vessel. In addition, it is clear that at some point during his employment, Mr. Lambert also had both actual and apparent authority.

Once authority is created, it can be terminated in a manner similar to its creation. Actual authority terminates when the agent or principal manifests to the other that he or she dissents to the continuance of the authority. *Id.* at § 118. Clearly, the former captains' actual authority ended upon termination of the employment relationship.

Apparent authority terminates when a third party has notice of the termination. *Id.* at § 125. Notice is acquired when the third party

> has reason to know, should know, or has been given a notification of the occurrence of an event from which, if reason-

able, he would draw the inference that the principal does not consent to have the agent so act for him [or] that the agent does not consent so to act for the principal.

*Id.* at § 135. One event that conveys notice of the termination of apparent authority to a third party is the termination of the agent's employment. *D & G Equip. v. First Nat. Bank of Greencastle Pa.,* 764 F.2d 950, 955 (3d Cir.1985); *Bernstein v. Centaur Ins. Co.,* 644 F.Supp. 1361, 1369 (S.D.N.Y.1986). Therefore, under the general rules of agency law, Corsta can be bound only by statements that were made by former captains Priest and Lambert before Plaintiff had notice of the termination of their employment. Accordingly, the Court will consider only evidence of statements made before Plaintiff had notice that Mr. Priest and Mr. Lambert were no longer employed as captains of the Vessel.

▮ After reviewing Mr. Lambert's affidavit and Mr. Priest's deposition testimony, the Court finds that the only such evidence presented by Plaintiff is contained in Mr. Lambert's affidavit.[5] In his affidavit, Mr. Lambert states that he advised Mr. McKenna that Plaintiff would be paid in full for all work performed because it had been performed in a workmanlike manner.[6]

▮ However, this statement does not warrant a grant of summary judgment in Plaintiff's favor. First, the Court notes that the affidavit does not indicate when the statement was made. This omission is crucial since the statement could only refer to work that was completed at the time the statement was made. Since Mr. Lambert left his position as captain in mid-October, it is impossible that he could have been referring to all the invoices at issue.[7] Two of the invoices were issued in November. Another was issued on October 12, 2001. Since it often took Mr. Lambert several weeks to review invoices, it is likely, if he were still employed on October 12, that Mr. Lambert never reviewed this invoice either.

In addition, it is entirely possible that the statement was not made immediately before he left his post as captain, but much earlier. In short, the uncertainty as to when the statement was made leaves the Court to wonder exactly what work Mr. Lambert was referring to. The Court is sure, however, that Mr. Lambert could not have been referring to all the work now in question since he left before some of the work was even performed.

Second, Mr. Lambert's statement does not warrant a grant of summary judgment in Plaintiff's favor because there is evidence that Plaintiff was on notice as early as August of 2001, when Brian Holland

5. Despite Plaintiff's argument to the contrary, the Court does not find Mr. Priest's deposition transcript to contain any binding admissions. First, Mr. Priest did not testify as to any statements he made as captain of the ship that could be classified as an admission.

Second, Mr. Priest's testimony is not relevant since Mr. Priest admitted that he has no personal knowledge of work at issue in Plaintiff's motions for summary judgment.

6. Corsta argues that Mr. Lambert's affidavit should be stricken because the statements it contains are hearsay. However, because the

statements are not offered for the truth of the matter asserted, but are offered merely to show that the statement was made, the Court finds these statements are not hearsay. *See* Fed.R.Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted* ") (emphasis added).

7. Plaintiff seeks payment for nine invoices issued between September 17, 2001 and November 6, 2001.

began overseeing invoices, that Mr. Lambert's authority to approve invoices had been terminated. If Mr. Lambert's apparent authority had already terminated when he made the alleged statement, his statement could not constitute a binding admission. According to Corsta, Mr. Holland began contacting Plaintiff with questions about the invoices as early as August. (Holland Aff. ¶ 8). Plaintiff was advised that invoices should be presented to Mr. Holland, and not Mr. Lambert, for approval and payment. (Holland Aff. ¶ 9).[8] Indeed, it appears that as early as September 5, 2001, Plaintiff began corresponding with other Corsta employees besides Mr. Lambert regarding payment of invoices.

In conclusion, the Court finds that while Mr. Lambert's statement could qualify as a binding admission, it does not justify a grant of summary judgment in Plaintiff's favor.

## B. *Contract Notice Requirement*

Plaintiff also argues that summary judgment should be granted in its favor because Corsta has waived its right to contest Plaintiff's performance by failing to raise its complaints within 30 days of performance. Plaintiff's argument is based on the limitation of liability clause contained in the parties' contract, which states that:

> [n]o claim for damages for negligence or otherwise for defective workmanship or materials shall be valid and Contractor shall be discharged from all liabilities thereof unless a claim is made to the Contractor within thirty (30) days after delivery of the vessel or completion of the work, whichever first occurs.

In response, Corsta argues first that the limitation of liability clause is invalid. Alternatively, Corsta asserts that the limitation of liability clause provided Corsta 30 days from the date of total completion to complain. Since the work was never completed, Corsta contends the 30–day period never began, and therefore, never ended. The Court will first address Corsta's argument that the limitation of liability clause is invalid.

### 1. *Validity of the Limitation of Liability Clause*

It is well settled that "[p]arties to a contract for the repair of a vessel may validly agree to limit the repairer's liability." *Diesel "Repower," Inc. v. Islander Investments Ltd.*, 271 F.3d 1318, 1324 (11th Cir.2001) (citing *Edward Leasing Corp. v. Uhlig & Assocs., Inc.*, 785 F.2d 877, 888 (11th Cir.1986)). However, to

---

8. Plaintiff argues that Mr. Holland's affidavit should be stricken from the record. First, Plaintiff argues that Mr. Holland does not have personal knowledge of the facts recited in his affidavit. In support of this argument, Plaintiff claims that "[w]ho Mr. Holland is and what relationship he has to the parties in this case is not identified nor does Mr. Holland's affidavit set forth any personal knowledge regarding the repairs at issue or that he has any expertise in the ship repair business." (Plaintiff's Reply Brief p. 11). The Court does not agree with Plaintiff. First, while Mr. Holland's affidavit does not account for his relationship to the parties, there is other evidence submitted in this case regarding who Mr. Holland is and his relationship to the parties.

Second, the Court does not find that expertise is required by Mr. Holland to recite the facts in his affidavit.

Plaintiff also argues that Mr. Holland's affidavit should be stricken because the captains were in charge of supervising and inspecting work performed by Plaintiff and therefore, Mr. Holland's testimony is irrelevant. The Court does not agree. For one, any authority the captains had does not render Mr. Holland's testimony irrelevant. Secondly, the Court notes that Mr. Holland's affidavit conflicts with Plaintiff's contention. According to the affidavit, in August or September of 2001, Mr. Holland was given authority to approve invoices.

determine if a specific limitation of liability clause is enforceable, the Court must apply a three-step test: (1) the clause must clearly and unequivocally indicate the parties' intentions; (2) the clause may not absolve the repairer of all liability and the liability risk must still provide a deterrent to negligence; and (3) the "businessmen" must have equal bargaining power so there is no overreaching. *Id.*

■ Corsta argues that the limitations clause is unenforceable because the second of the above listed requirements is not satisfied. Specifically, Corsta argues that the clause discharges Plaintiff from all liabilities and therefore does nothing to discourage negligence or breach of contract. Plaintiff responds that the clause does not absolve it of all liability because if a complaint is made within the allotted time, Plaintiff's liability is unlimited. In addition, Plaintiff argues that the clause provided a deterrent to negligence because of the captains' close supervision of Plaintiff's work, which would likely result in prompt complaints.

The Court agrees with Plaintiff on this issue. The limitation of liability clause does not completely absolve Plaintiff of liability. Rather, it merely limits the amount of time in which Corsta may raise its complaints. Accordingly, the Court finds that such a limitation does not render the clause unenforceable.

2. *Interpretation of the Limitation of Liability Clause*

■ After finding that the clause is enforceable, the Court must now determine the correct legal interpretation of the contract language. *See Russell & Axon v. Handshoe,* 176 So.2d 909, 912 (Fla.Dist.Ct. App.1965) (noting that "duty of construing a contract usually is that of the court and not the jury"). When interpreting a maritime contract, this Court must apply the law of the place where the contract was

made, which in this case, appears to have been Florida. *Rose v. M/V "Gulf Stream Falcon,"* 186 F.3d 1345, 1350 (11th Cir. 1999) (citing *S.C. Loveland, Inc. v. East West Towing, Inc.,* 608 F.2d 160, 164 (5th Cir.1979)).

■ Under the Florida law of contracts, the first step in contract interpretation is to look "at the words used on the face of the contract to determine whether that contract is ambiguous." *Id.* (citing *Hurt v. Leatherby Ins. Co.,* 380 So.2d 432 (Fla.1980); *Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp.,* 364 So.2d 15 (Fla. 4th DCA 1978)). "Words in an instrument should be given their natural or most commonly understood meaning." *Gilmore v. St. Paul Fire and Marine Ins.,* 708 So.2d 679, 680 (Fla. 1st DCA 1998) (quoting *Tropabest Foods, Inc. v. State Dep't of Gen. Servs.,* 493 So.2d 50, 51–52 (Fla. 1st DCA 1986)). Here, as explained above, the contract language at issue states:

> No claim for damages for negligence or otherwise for defective workmanship or materials shall be valid and Contractor shall be discharged from all liabilities thereof unless a claim is made to the Contractor within thirty (30) days after delivery of the vessel or completion of the work, whichever first occurs.

The Court finds that the clear and unambiguous language of the contract gives Corsta 30 days after Plaintiff's completion of all the work, and not 30 days from the time of performance of the work, to voice its complaints.

■ A court may go beyond the plain meaning of the language, however, to consider "any evidence that the parties intended the words to have a special meaning." *Madson v. Madson,* 636 So.2d 759, 761 (Fla. 2d DCA 1994) (citing *Bingemann v. Bingemann,* 551 So.2d 1228 (Fla. 1st DCA 1989)). Plaintiff has submitted the

affidavit of Mr. Lambert to support its contention that "completion of the work" actually referred the time of performance.[9] The Court is not persuaded by this evidence.

According to Mr. Lambert's affidavit, "any complaints regarding work performed by [Plaintiff] or the charges resulting therefrom had to be made to Alan McKenna within *thirty days of the work being performed* or the Complaint was waived as provided by the Contract." (Lambert Aff. ¶ 17). The Court does not find that this was the intent of the parties.

First, the Court notes that this interpretation of the contract is in tension with the contract's plain meaning. If the parties intended time of completion to refer to time of performance, they could have specifically said so in the contract.

Second, the Court does not find this interpretation of the contract language to be reasonable. Plaintiff's interpretation of the contract language would unduly restrict the rights seemingly guaranteed by the contract. Mr. McKenna admits in his deposition that invoices were initially issued weekly, but eventually, were issued by milestone. (McKenna Depo. p. 14). Indeed, the Court's review of the invoices reveals that sometimes invoices were issued for work performed nearly three weeks before. If the time for Corsta to complain ran from the date of performance of the work, in some situations, Corsta's thirty day complaint period would be cut down to only a week or so.[10] The Court finds that this interpretation is not "consistent with reason, probability, [or] practical aspects of the transaction." *Marshall Maines*, 491 So.2d at 1235 (citing *Blackshear Mfg. Co. v. Fralick*, 88 Fla. 589, 102 So. 753, 754 (1925)).

Third, the Court notes that to interpret the contract as requiring complaints to be made within 30 days of performance would place a heavy burden on Corsta. Under Plaintiff's interpretation of the contract, every time a nail was hammered in, the clock would start running. It is hard for the Court to accept this interpretation of the language as the parties' intent. Again, this interpretation is not "consistent with reason, probability, [or] practical aspects of the transaction." *Marshall Maines*, 491 So.2d at 1235 (citing *Fralick*, 102 So. at 754).

Moreover, even if the Court were to credit Plaintiff's contention that "completion of the work" actually means "per-

---

9. Plaintiff also asserts that Mr. Priest's deposition testimony supports its interpretation of the contract. The Court disagrees. During his deposition, the following exchange occurred:

Q. All right. Did you discuss with Alan any terms regarding how complaints regarding work was going to be handled? Like if—if—if some work was done by ASK Corporation and—and you didn't like it, was there any terms that—that were discussed regarding the time period for you to complain, or—or -
A. Yeah, it's in the contract here.
Q. What were the terms?
A. It's up to 30 days you've got to complain and get it resolved.

(Priest Depo. pp. 45–46). The Court finds that Mr. Priest's deposition testimony is inconclusive as to the contract's interpretation since Mr. Priest never specifies when the 30–day period begins to run.

10. The Court notes that an alternative interpretation of the contract language would be that the 30–day period began to run as of the date of the invoice. The Court finds that this, too, could not have been the intent of the parties. Contract language "should be read in common with other [contract] provisions to accomplish the intent of the parties." *Gilmore*, 708 So.2d at 680. In doing so, the Court notes that the next provision of the contract refers specifically to "presentment of invoice." Had the parties intended "completion of the work" to refer to the time of invoicing, the parties would have used the same language used later in the contract.

formance of the work," this discrepancy would render the contract language ambiguous. In such a case, the Court must construe all ambiguities against the drafter, which is Plaintiff. *Gilmore*, 708 So.2d at 680 (citing *Ellsworth v. Ins. Co. of N. Am.*, 508 So.2d 395, 400 (Fla. 1st DCA 1987)); *Maines v. Davis*, 491 So.2d 1233, 1235 (Fla. 1st DCA 1986) (citing *Hurt v. Leatherby Ins. Co.*, 380 So.2d 432, 434 (Fla.1980)). In doing so, the Court would again find that "completion of the work" refers to the total completion of work.

■ Therefore, the Court must now determine whether Plaintiff completed all its work to resolve the issue of whether Corsta has waived its complaints. As the moving party, Plaintiff bears the initial burden of demonstrating the absence of an issue of material fact. Plaintiff has submitted no evidence of the completion of all work contracted for. In addition, Corsta asserts that Plaintiff's work was not completed.[11] Therefore, since a genuine issue of material fact remains, the Court finds that summary judgment on Plaintiff's claims is not appropriate at this time.

### C. *Corsta's Counterclaim*

In addition to seeking summary judgment on its claims, Plaintiff asks in its briefs that the Court dismiss or enter judgment against Corsta with respect to Corsta's Counterclaim. However, Plaintiff's briefs were filed months before Corsta actually filed its Answer and Counterclaim. The Court finds that it would be both unfair and improper to expect Corsta to respond to such arguments before its Counterclaim was even asserted. There-

fore, to the extent that Plaintiff has moved for summary judgment on Corsta's Counterclaim, the Court finds that such motion should be **DENIED**.

### CONCLUSION

After careful consideration, the Court finds that Plaintiff's motions for summary judgment should be DENIED.

---

11. Corsta has presented evidence that Plaintiff's did not complete its work under the contract. As evidence, Plaintiff submitted the affidavits of Mr. Holland, Mr. Eve, Mr. Hayden, and Thomas Howell. Plaintiff has argued that these affidavits should be stricken for numerous reasons. The Court has previously addressed Plaintiff's arguments for striking the affidavit of Mr. Holland and found Plaintiff's arguments unconvincing. The Court has not addressed the issue of whether the affidavits of Mr. Eve, Mr. Hayden, or Thomas Howell should be stricken. The Court need not address this issue, however, since Plaintiff has failed to produce evidence that its work was completed.