LaROSE, Judge.
Lillian Sommerville sued Allstate Insurance Company for uninsured/underinsured motorist (UM) benefits for injuries she suffered while riding a motorcycle rented by her employer, Pavili Installations, Inc. She now appeals a final summary judgment entered in Allstate’s favor. We review a summary judgment de novo. Beverly v. State Farm Fla. Ins. Co., 50 So.3d 628, 629 (Fla. 2d DCA 2010) (citing Suncoast Auto Ctr., Inc. v. Consol. Prop. & Cas. Ins. Co., 880 So.2d 728, 730 (Fla. 2d DCA 2004)). The trial court erred in concluding that the business automobile insurance policy issued to Pavili did not provide UM coverage to Ms. Sommerville. We reverse.
Pavili was the named insured on the policy. See § 627.732(4), Fla. Stat. (2007) (“ ‘Named insured’ means a person, usually the owner of a vehicle, identified in a policy by name as the insured under the policy.”). Ms. Sommerville is the company president. The policy did not identify the motorcycle as a vehicle for which Pavili *560 paid premiums. However, under certain conditions, the policy provided for additional persons to be “insureds” and for additional vehicles to be “covered ‘autos.’ ”[1]
Typically, automobile insurance policies recognize two classes of insureds. Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229, 238 (Fla.1971). Class I insureds are named insureds and their resident relatives. Travelers Ins. Co. v. Warren, 678 So.2d 324, 326 n. 2 (Fla.1996) (citing Mullis, 252 So.2d at 238; Quirk v. Anthony, 568 So.2d 710, 713 n. 2 (Fla. 2d DCA 1990), approved, 583 So.2d 1026 (Fla. 1991)). Class II insureds are lawful occupants of an insured vehicle who are not named insureds or resident relatives of named insureds; essentially, they are “third-party beneficiaries to the named insureds’ policy.” Id. Class II insureds “are insured only because they are drivers or passengers in an insured vehicle with the consent of the named insured.”[2] Florida Farm Bureau Cas. Co. v. Hurtado, 587 So.2d 1314, 1317 (Fla.1991) (citations omitted). Because Pavili was the only named insured, Ms. Sommerville was no more than a class II insured. She is entitled to UM coverage only if the motorcycle she was riding was an insured vehicle.[3]
For purposes of liability coverage, the policy defines “an insured,” in pertinent part, as follows:
SECTION II — LIABILITY COVERAGE
A. Coverage
We will pay all sums an “insured” legally must pay as damages because of “bodily injury” or “property damage” to which this insurance applies, caused by an “accident” and resulting from the ownership, maintenance or use of a covered “auto”.
[[Image here]]
1. Who Is An Insured
The following are “insureds”:
a. You [Pavili] for any covered “auto”.
b. Anyone else while using with your permission a covered “auto” you own, hire or borrow....
The UM endorsement defines an “insured,” in pertinent part, as follows:
B. Who Is An Insured
If the Named Insured is designated in the Declarations as:
*561 [[Image here]]
2. A partnership, limited liability company, corporation or any other form of organization, then the following are “insureds”:
a. Anyone “occupying” a covered “auto”....
Both the liability coverage section and the UM endorsement extend protection to any person occupying a “covered ‘auto.’ ”
The policy Declarations show premium charges for only two Pavili-owned trucks. Coverage, however, is not limited necessarily to those vehicles. Allstate used “covered auto designation symbols” to identify vehicles for each type of coverage under the policy. For liability coverage, Allstate used the following designations:
7 — Specifically Described “Autos” — Only those “autos” described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any “trailers” you don’t own while attached to any power unit described in Item Three).
8 — Hired “Autos” Only — Only those “autos” you lease, hire, rent or borrow. This does not include any “auto” you lease, hire, rent, or borrow from any of your “employees”, partners (if you are a partnership), members (if you are a limited liability company) or members of their households.
9 — Nonowned “Autos” Only — Only those “autos” you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes “autos” owned by your “employees”, partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.
Pavili’s two trucks fall within designation 7. The rented motorcycle fits neatly within designation 8.[4] For UM coverage, however, the Declarations list as “covered ‘autos’” only designation 7, Pavili’s two trucks. Accordingly, we must explain what some may view as an apparent gap in the policy between liability and UM coverages.
In enacting the UM statute, section 627.727, the legislature intended “to provide for the broad protection of the citizens of this State against uninsured motorists.” Salas v. Liberty Mut. Fire Ins. Co., 272 So.2d 1, 5 (Fla.1972); accord Gilmore v. St. Paul Fire & Marine Ins., 708 So.2d 679, 681 (Fla. 1st DCA 1998). Insurers must provide UM coverage for all vehicles insured for liability purposes, at no less than the liability limits, unless the named insured rejects UM coverage entirely or selects lower UM limits.[5] “The UM statute is intended to protect injured people and is not intended to benefit insurance companies or motorists who cause damage to other people.” Varro v. Feder *562 ated Mut. Ins. Co., 854 So.2d 726, 729 (Fla. 2d DCA 2003) (citations omitted); see Armstrong v. Allstate Ins. Co., 712 So.2d 788, 790 (Fla. 2d DCA 1998) (citations omitted).
Uninsured motorist coverage “is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law[6].... ” Mullis, 252 So.2d at 237-38. “As a creature of statute rather than a matter for contemplation of the parties in creating insurance policies, the uninsured motorist protection is not susceptible to the attempts of the insurer to limit or negate that protection.” Gilmore, 708 So.2d at 681 (quoting Salas, 272 So.2d at 5). “[I]t is not to be ‘whittled away’ by exclusions and exceptions.” Mullis, 252 So.2d at 238. Of course, the named insured may reject or limit the statutory coverage. Id.; accord Gilmore, 708 So.2d at 681. But such limitation/rejection must be executed in writing on an approved Office of Insurance Regulation form fully advising the applicant that UM coverage will be equal to liability limits unless the applicant selects lower limits or rejects coverage. § 627.727(1), (2). Although Pavili selected UM limits lower than its $1,000,000 liability limits, it did not reject UM coverage entirely.
Allstate’s policy offered liability coverage for the rented motorcycle under designation 8, but not UM coverage, which appears limited to vehicles under designation 7. According to Allstate, Ms. Sommerville fits the liability definition of “insured” — “[a]nyone else while using with your permission a covered ‘auto’ you own, hire or borrow [7, 8, 9]” — but not the UM definition — “[ajnyone ‘occupying’ a covered ‘auto’ [7 only].” Allstate contends that this limitation is permitted by section 627.727(9)(b), which allows policies providing that “[i]f at the time of the accident the injured person is occupying a motor vehicle, the uninsured motorist coverage available to her or him is the coverage available as to that motor vehicle.” Allstate argues that Pavili elected to accept UM coverage for only the two trucks for which it paid a premium. However, “[a]n informed rejection of uninsured motor vehicle coverage cannot, without extrinsic evidence, be implied from the insured’s signature on the application for uninsured motor vehicle coverage.” Nationwide Prop. & Cas. Ins. Co. v. Marchesano, 482 So.2d 422, 424 (Fla. 2d DCA 1985) (quoting Zisook v. State Farm Mut. Auto. Ins. Co., 440 So.2d 452, 454 (Fla. 3d DCA 1983)). Section 627.727(9)(a)-(e) allows insurers to offer policies limiting UM coverage. The statute, however, does not provide for a UM exclusion of specific vehicles, and Pavili did not reject that coverage.
In Varro, we held that a policy excluding UM coverage for only some insureds violated the UM statute. 854 So.2d at 729. We observed that limitations on UM coverage under section 627.727(9) “do not include a provision that allows an exclusion of particular individuals from UM coverage.” Id. at 728. We stated that a “policy may contain other general conditions affecting coverage or exclusions on coverage as long as the limitations are unambiguous and ‘consistent with the purposes of the UM statute.’ ” Id. at 728-29 (quoting Flores v. Allstate Ins. Co., 819 So.2d 740, 745 (Fla.2002)). Because the limitation on particular individuals was unambiguous, *563 we examined whether it was contrary to the UM statute’s purposes. Id. at 729. We held that “[ujnder section 627.727(1), an insured may reject UM coverage ‘on behalf of all insureds under the policy,’ but the statute does not allow rejection of UM coverage on behalf of only some insureds ....” Id. at 729.
Similarly, the UM limitation on particular vehicles here is unambiguous. Under section 627.727(1), a named insured may reject UM coverage or select lower UM limits for all insured vehicles, but section 627.727(1) does not provide for rejection of UM coverage for only some vehicles. See Mosca v. Globe Indem., 693 So.2d 674, 675 (Fla. 4th DCA 1997). In Mosca, the Fourth District held that insurers may not limit UM coverage by defining “covered autos” more narrowly in the UM context than for liability coverage. If a policy purports to do so, the liability definition of “covered autos” will determine UM coverage. Id. (approving Ropar v. Travelers Ins. Co., 205 Ga.App. 249, 422 S.E.2d 34 (1992) (applying Florida law and holding UM policy’s definition of “covered autos” could not be narrower than liability policy’s definition)).
Because the policy here purports to limit UM coverage by defining “covered autos” more narrowly in the UM provisions than in the liability provisions, its liability definition of “covered autos” determines UM coverage. Accordingly, the trial court erred in relying on the narrower definition of “covered auto” in granting summary judgment.
Reversed and remanded for further proceedings consistent with this opinion.
NORTHCUTT and SILBERMAN, JJ., Concur.

.“Insured" and "covered” are used interchangeably in many cases. See, e.g., Allstate Ins. Co. v. Durham, 838 So.2d 1254, 1256 (Fla. 5th DCA 2003); Auto Owners Ins. Co. v. Potter, 774 So.2d 859, 860 (Fla. 4th DCA 2000); Milgram v. Allstate Ins. Co., 731 So.2d 134, 136 (Fla. 1st DCA 1999). However, in interpreting an insurance policy, its definitions control. "Where there are two interpretations which may fairly be given to language used in a policy, the one that allows the greater indemnity will govern.” New Amsterdam Cas. Co. v. Addison, 169 So.2d 877, 881 (Fla. 2d DCA 1964) (citations omitted); see also Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000) ("Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties.”).

. "When the named insured is a corporation, it obviously can never have a bodily injury or a UM claim as well as claims for coverage for family members. The entire risk in such a situation arises from class II insureds.” Varro v. Federated Mut. Ins. Co., 854 So.2d 726, 728 (Fla. 2d DCA 2003).

. No one disputes that Pavili permitted Ms. Sommerville to ride the motorcycle. Apparently, she rented the motorcycle on Pavili's behalf for her use in California. Our record does not disclose the purpose of the rental and we offer no view here as to the impact, if any, that any actual or intended use may have on Ms. Sommerville’s UM claim.

. The policy's description of "autos” specifically includes motorcycles.

. § 627.727 Motor vehicle insurance; uninsured and underinsured vehicle coverage....
No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles....
(2) The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured....

. Every owner or operator of a motor vehicle, which motor vehicle is ... required to be registered in this state, shall ... establish and maintain the ability to respond in damages for liability on account of accidents arising out of the use of the motor vehicle in the amount of $10,000 because of damage to, or destruction of, property of others in any one crash.
§ 324.022, Fla. Stat. (2007).